# WHEELING.

## MASON & HOGE *v.* WARTHENS.

### July 13, 1874.

1874.
June Term.

1. The twenty-first section of the Bankrupt Act, of 1867, so far as the stay is concerned, applies to personal final judgments against the debtor, and not to judgments against the property attached, or the proceeds of the sale thereof, when the attachment lien accrued prior to the filing of the petition in bankruptcy.

2. An attachment lien, acquired regularly, without the procurement or sufferance of an insolvent debtor, to give preference to the attaching creditor over other creditors, will not be displaced by virtue of the thirty-fifth or thirty-ninth sections, by subsequent proceedings in bankruptcy, though commenced within four months after the levy of the attachment.

3. Under said sections something more than passive non-resistance in an insolvent debtor is necessary to invalidate an attachment lien on his property, when the debt is due and he has no defence

4. In such case there is no legal obligation on the debtor to file a petition in bankruptcy to prevent the attachment and levy thereof, and a failure to do so is not sufficient evidence of an intent to give a preference to the attaching creditor or to defeat the operation of the Bankrupt Law.

5. Though the attaching creditor, in such case, may know the insolvent condition of the debtor, his attachment and levy upon his property are not, therefore, void and are no violation of the Bankrupt Law.

Appeal, by B. H. Warthen, B. G. Warthen, the defendants below as partners composing the late firm of B. H. Warthen & Bro., and Stephen Hunter, assignee of said B. H. Warthen & Bro., a firm composed, as aforesaid, from a judgment of the circuit court of Greenbrier county, in *four* several suits at law, against certain attached effects which belonged to said B. H. Warthen & Bro., entered

on the sixteenth day of October, 1872. The plaintiffs below were Claiborne R. Mason and Charles E. Hoge, partners composing the firm of Mason & Hoge, in the *first* suit; P. B. Hoge and said Charles E. Hoge, partners composing the firm of P. B. Hoge & Bro, in the *second* suit; Thomas L. Feamster in the *third* suit and Jesse C. Bright in the *fourth* suit. The appeal appears to have been taken in the name of the said Warthens, individually, and not as partners or late partners. The other facts appear in the opinion of the Court.

The Hon. Joseph M. McWhorter, judge of said circuit court, presided at the trial below.

*Samuel Price,* for the appellants.

*John W. Harris,* for the appellees.

HAYMOND, PRESIDENT:

The case *first* named, in the statement of the case, is an action of debt brought by the plaintiffs therein against B. H. Warthen and B. G. Warthen, partners in business under the firm name of B. H. Warthen & Bro. in the circuit court of Greenbrier county, in this state. The action was commenced on the 20th day of March, 1872, and the summons therein was executed on defendant B. H. Warthen on the 21st of same month and on defendant B. G. Warthen on the 1st day of May, 1872. On the same day the action was brought the plaintiffs therein, sued out, in their suit, an order of attachment against the estate of the defendants, which was levied by James Knight, sheriff of Greenbrier county, on sundry articles of personal property. On the 28th of March, 1872, the same plaintiffs sued out in their suit another order of attachment against the estate of the defendants which was levied on sundry articles of personal property of defendants on the same day, by a constable of said county. Each of the orders of attachment were made returnable to the first day of the next

term of the circuit court of said county. These. proceedings were had under the provisions of chapter one hundred and six of the Code of this State as amended by the act of the Legislature, passed the 27th day of February, 1871. Acts of Legislature of 1871, pp. 181, 182. Bond and security was given by the plaintiffs and filed with the clerk of the court before the attachments issued.

The suit, *second* above named, was brought by the plaintiffs therein, against the same firm on the same day of the suit first named, and is an action of trespass on the case in assumpsit; and two separate orders of attachment were sued out in the suit, corresponding in date, respectively, with the orders of attachment above named, and were severally executed by the same officers and were made returnable at the same time and to the same court. The circuit court afterwards, at the April term, 1872, thereof, made an order directing the officers who levied the attachments to make sale of so much of the property, so levied upon, as was necessary to pay the debt of the plaintiffs with interest, cost and expenses of sale.

The case of the plaintiff, *third* above named, is an attachment issued by a justice on the 10th day of May, 1872, against the estate of B. H. and B. G. Warthen, for a debt therein named, and was made returnable to the next term of the circuit court of said county, thereafter. This attachment was levied by the same constable, before referred to, on the day of its date, upon various articles of property, on all of which previous attachments of Hoge and others were levied, except some tools and hammers.

The suit of the plaintiff, *fourth* above named, is an action of trespass on the case in assumpsit and was brought on the 16th day of May, 1872, in the same court and the summons therein was executed on the 18th day of May, 1872. On the day this suit was brought the plaintiff therein sued out, in his suit, an order of at-

tachment returnable to the next term of the same court thereafter, which, on the day of its date, was levied by the same constable on various articles of personal property, upon nearly all of which the previous attachments had been levied.

On the 24th of May 1872, the judge of same court, in vacation, made an order directing the constable, who levied the two last named attachments, to sell the property upon which they were levied for cash, &c : And the court and judge, in and by said orders of sale, directed said sheriff and constable to report their proceedings, under said order, to the court.

The sheriff made sale under the order of court, of the property levied on by him to the amount of $1,453.33, and the costs attending the keeping of the property were $170.

The constable, also, under said orders of court and of the judge in vacation, sold property to the amount of $97.85.

It appears, by the record in this case, that at a term of the circuit court aforesaid, held on the 16th day of October, 1872, upon the calling of said causes, the defendants, therein, by counsel, moved the court to enter in each cause an order in these words, viz: "It being made to appear to the court that the defendants have been declared bankrupt since the institution of these suits, upon the motion of the defendants, it is ordered that the same be stayed to await the determination of the court of bankruptcy on the question of their discharge from their debts." And they produced in evidence, in support of their motion, a copy of an order of W. W. Forbes, Register in Bankruptcy for the District Court of the United States for the Eastern District of Virginia, showing that B. G. Warthen, by whom a petition for adjudication of bankruptcy was filed on the 16th day of July, 1872, was, on the day and year last aforesaid, upon good proof taken, found by him to have become a bankrupt within

the true intent and meaning of the Act of Congress, entitled, "An act to establish a uniform system of bankruptcy throughout the United States," approved March 2, 1867, and that at that time the Register declared and adjudged him a bankrupt. And also a copy of an order of the said District Court showing that in the matter of B. G. Warthen v. B. H. Warthen & Bro., against whom a petition in bankruptcy was filed on the 1st day of October, 1872, (more than four months after the attachments were levied) in that court, at Richmond, on the same day before Hon. John C. Underwood, judge of the Eastern District of Virginia, at a regular term of said court, said matter came on to be heard and the said B. H. Warthen having filed his written consent to an adjudication in bankruptcy being entered, it was adjudged that B. H. Warthen & Bro., became bankrupt within the true intent and meaning of the said act establishing a uniform system of bankruptcy throughout the United States, before the filing of said petition, and they are therefore adjudged bankrupt accordingly.

And, also, that Stephen Hunter, by his counsel, presented his petition, as assignee in bankruptcy, which he asked to have made applicable to all of said causes. The petition in substance "petitions the court, and says that, by decrees of the District Court of the United States, for the Eastern District of Virginia, the said firm of B. H. Warthen & Bro., was declared bankrupt, and that he was appointed assignee of B. G. Warthen, and is thereby entitled to the money and effects of B. G. Warthen, now in the hands of the sheriff of this county, and of the constable of Lewisburg township, and under the control of this court, for which moneys he has received an order and assignment from W. W. Forbes, Register in Bankruptcy, which he prays may be delivered over to him accordingly, and that the attachments in these causes may be dissolved." And he accompanied the petition with the two orders, before men-

tioned, and, also, a copy of an assignment from said Forbes, as Register in Bankruptcy, to Stephen Hunter, of Richmond, in the county of Henrico, and state of Virginia, assignee of the estate of B. G. Warthen, duly declared bankrupt by said District Court, conveying and assigning to the said Stephen Hunter, assignee as aforesaid, all the estate real and personal, of the said B. G. Warthen, bankrupt, including all property of whatever kind of which he is possessed, or in which he was interested or entitled to have on the 16th day of July, 1872, &c.; also a copy of an order substantially in these words, viz: "In the District Court of the United States for the Eastern District of Virginia. In the matter of B. G. Warthen, of the firm of B. H. Warthen & Bro., bankrupts. Upon the petition of Stephen Hunter, assignee of the above named bankrupts, it is adjudged, ordered and decreed that ———— Knight, sheriff of Greenbrier county, West Virginia, and the constable of Lewisburg township, in said county, and State, pay over to said Hunter, assignee as aforesaid, whatever moneys are in their hands belonging to said bankrupt's estate, or to the firm of B. H. Warthen & Bro., the proceeds of the sale of certain property of said bankrupts, sold by the said sheriff and constable." But the court refused to enter said order staying the said causes, and to allow said petition.

To all the judgments of the court and for failing to allow the petition of said Hunter to be filed in said causes and for failing to dissolve the attachments as prayed for, the defendants and Hunter excepted and tendered their bill of exceptions which was signed, sealed and made a part of the record.

The court after refusing to direct the stay and to allow the petition of Hunter to be filed, and at the same time, proceeded to, and did, render, in said four causes, judgments against the proceeds of the sale of the property attached, on proof being made, as follows: Mason & Hoge, $699.92;

*margin:* 1874. June Term. Mason & Hoge v. Warthens.

P. B. Hoge & Bro., in the sum of $144.59 ; Thomas L. Fcamster $193.07 ; to J. C. Bright $195.95,—all as of the 15th day of September, 1872, together with the costs of their respective suits and directed the sheriff and constable who made the sales of the property levied on to pay out the fund in their hands, arising from said sales, to the said several plaintiffs, in the order they are above named, with interest and costs above mentioned, and that they bring the residue into court, subject to its future order.

The judgments in the causes are all embraced in one order. The court did not render personal judgments against the defendants and the order so states.

From the action of the court in refusing the stay asked by the defendants and in relation to said petition, &c., the defendants, and Hunter the assignee, have appealed to this Court and assign the following as errors committed by the circuit court, viz :

*First,* In refusing to make the order staying the proceedings until the action of the court in bankruptcy, upon the question of discharge, should take place.

*Second,* In refusing Hunter, assignee in bankruptcy, of Warthen, to file his petition.

*Third,* In proceeding to distribute the attached effects among the attaching creditors.

No other questions are presented to us by the appellants, and so far as we are advised, no other question fairly arises upon the record upon this appeal and we do not now determine any other questions.

To a proper understanding of the questions under consideration, it is necessary to recur to some of the sections of the bankrupt law of 1867, which are applicable. It is provided by the twenty-first section of the act, that no creditor, proving his debt or claim, shall be allowed to maintain any suit at law or in equity therefor against the bankrupt, but shall be deemed to have waived all right of action and suit against the bankrupt; and all

proceedings already commenced, or unsatisfied judgments already obtained thereon, shall be deemed to be discharged and surrendered thereby. And no creditor, where his debt is provable, under this act, shall be allowed to prosecute to final judgment, any suit at law or in equity, therefor, against the bankrupt until the question of the debtor's discharge shall have been determined. And any such suit or proceeding upon the application of the bankrupt, shall be stayed to await the determination of the court in bankruptcy on the question of the discharge: *Provided,* there be no·unreasonable delay on the part of the bankrupt in endeavoring to obtain his discharge : *And provided, also,* That if the amount due the creditor is in dispute, the suit, by leave· of the court in bankruptcy, may proceed to judgment for the purpose of ascertaining the amount due, which amount may be proved in bankruptcy ; but execution shall be stayed as aforesaid. It does not appear, nor is it claimed, that the plaintiffs, or any of them, have proved or attempted to prove, their debts in bankruptcy, but so far as is disclosed, they are of such character as to be provable under the bankrupt law. The plaintiffs' debts are against the firm of B. H. Warthen & Bro. Bump, in his Law and Practice of Bankruptcy, pages 175 and 176, says: Courts of bankruptcy "have no authority to withdraw cases instituted in other courts before the commencement of proceedings in bankruptcy from those courts, and proceed to settle and adjust the claims of the parties thereto. Congress could, no doubt, have made an adjudication in bankruptcy operate, *proprio vigore,* to transfer all cases which should be pending in other courts at the time of the filing of the petition, and to which the bankrupt should be a party, from those tribunals into the courts of bankruptcy. It has, however, not done so. It not only has not deprived the other courts of jurisdiction over such causes, but it has provided for their prosecution and defence in these courts by the assignee. This principle applies not only to all or-

dinary actions to collect a debt, but also to all proceedings to enforce a lien, so long as the amount due is in dispute, or remains unascertained. The lien of an attachment, or the lien of a creditor upon property conveyed in fraud of creditors, or the lien of a partner upon partnership funds, may be enforced in other courts, where proceedings for that purpose have been instituted before the commencement of the proceedings in bankruptcy. Having obtained lawful jurisdiction over the parties and subject matters, they have the right to determine all questions, as they arise, according to law, subject to the final judgment of the Supreme Court of the United States, in case any right or claim is set up under any statute of the United States, and such right or claim is denied by them."—See same author, 177; *Peck v. Jenness*, 7 Howard, (Sup. Ct. U. S.,) 612; *In re, Hugh Campbell*, 1 Am. Law Times Reports, 30; *Samson v. Burton*, 4 B. R., 1; *Bates v. Tappan*, 3 B. R., 159; 99 Mass., 376; *Bowman v. Harding*, 4 B. R., 5; 56 Maine, 559; *Stoddard v. Locke*, 43 Vt., 574.

In the cases at bar the plaintiffs debts do not appear to be disputed. But in order to ascertain the amount of the several debts and the amount of the attachment liens it was necessary to prove the debts. The Code of this State chapter one hundred and six, section nine, provides that the plaintiff shall have a lien on the property on which the attachment is levied from the time of the levy. Other sections of the same chapter provide for the sale of the attached property and application of the proceeds thereof, to the attachment debts. The Bankrupt Act of 1867, does not destroy, but preserves, liens acquired prior to the filing of the petition in bankruptcy, including execution liens acquired by levy, not procured or suffered by the debtor to be sued out and levied with intent to give a preference to the execution creditor. In the case of *Wilson v. City Bank*, decided by the Supreme Court of the United States, reported in 17 Wall. 473, it was decided that "something more than pas-

sive non-resistance in an insolvent debtor is necessary to invalidate a judgment and levy on his property where the debt is due and he has no defence. In such case there is no legal obligation on the debtor to file a petition in bankruptcy to prevent the judgment and levy, and a failure to do so is not sufficient evidence of an intent to give a preference to the judgment creditor, or to defeat the operation of the bankrupt law. Though the judgment creditor, in such case, may know the insolvent condition of the debtor, his judgment and levy upon his property are not, therefore, void, and are no violation of the act. A lien thus obtained by him will not be displaced by subsequent proceedings in bankruptcy, though commenced within four months after levy of the execution or rendition of the judgment.

The said thirty-fifth section of the Bankrupt Act applies to attachment liens as well as execution liens.

The petition to declare the defendants bankrupt, as a firm, was not filed within four months from the levy of either of the attachments, and they each became liens from the time they were levied.

In the cases at bar the assignee does not pretend, in his petition, that the attachment liens were procured or suffered by the debtors or either of them to give a preference to the attachment creditors over other creditors; nor does he allege or state any fraud in any way or any lien on the moneys, &c., then in the custody of the court; nor does he state what part of the property levied on, if any, he claims, nor what money or effects of B. G. Warthen is in the hands of the sheriff, &c., under the attachments; nor does he ask to be permitted to be made a defendant to the attachments or dispute the debts or any of them, in whole or part; but he simply says to the court, in his petition, that B. H. Warthen & Bro., were declared bankrupt and that he was appointed assignee of B. G. Warthen, one of said bankrupts, and is thereby entitled to the moneys and effects of the said B. G. Warthen in the hands of the sheriff and constable, and

under the control of the court for which he has received an assignment from W. W. Forbes, Register in Bankruptcy which he prays may be delivered over to him and that the attachments may be dissolved. Admitting the substance of all he states in his petition and he plainly has no right or claim to the money or any part thereof, as against the attachment creditors. He seems simply to claim that because of his being assignee of one of the bankrupts, with an assignment of a Register in Bankruptcy as to that bankrupt, it destroys the attachments and their liens, and entitles him to demand and receive the money.

There was no error in the circuit court refusing to allow said petition to be filed, of which the assignee can complain here at this time, as he showed no valid claim to the money or any part thereof in exclusion of the attachment creditors. The twenty-first section of the of the bankrupt act applies to cases where the personal liability of the debtor is sought to be fixed and ascertained by final judgment pending the determination of the question of his discharge. The object of the stay is to give time for putting into action the permanent bar to the debt. Bump on Bankruptcy, 166, 167, 168. In other words it is to enable the bankrupt to obtain and plead his certificate of discharge in bar to a personal recovery against him. But the certificate in bar of the debt would not discharge the property attached or the proceeds thereof from being applied to the debts, by the court, by virtue of the attachment liens—the court would in such case give judgments *in rem* and not *in personam*, as was done by the court in these cases. In other words, if the defendants had been discharged from their debts and obtained certificates thereof and plead the same instead of asking the stay of further proceedings to await the determination of the court of bankruptcy in Virginia, as they did, the effect of the plea would only have been to defeat a personal judgment against them for the

debt, and would not have discharged the attachment liens or prevented the court from rendering judgment *in rem* as to the attached effects, or the proceeds of the sale thereof, for the payment of the attachment debts. The defendants had no right to ask a stay of proceedings against the money, in the custody of the court, subject to the attachments. They could only ask a stay of proceedings against them personally, for a reasonable time, to allow them to obtain discharges in the bankrupt court. To proceed *in rem* against the proceeds of the sale of the property could in no way prejudice them. They therefore asked too much of the court. The motion was too broad. But the court in fact did grant the defendants all they should have asked, in not rendering a personal judgment against them, but judgments *in rem* only. It would doubtless have been error in the circuit court to have rendered personal judgments against the defendants, at the time they rendered the judgments *in rem*.

Under the circumstances the circuit court committed no error to the prejudice of the defendants of which they can complain in this Court, at this time. If the assignee had moved the court to be made defendant to the actions or the attachment, or to make defense thereto, and the court had refused the motion or application, it is possible, though I do not now determine the question, that his proper remedy might be by *mandamus*. *Cannon v. Welford*, 22 Gratt., 195.

For these reasons the judgment of the circuit court of Greenbrier county in each of these cases, must be affirmed with costs and $30 damages to the appellees respectively, in each case. And the causes are, respectively, remanded to the said circuit court for further proceedings according to law.

The other Judges concurred.

JUDGMENTS AFFIRMED AND CAUSES REMANDED.