WILLIAM A. JACKSON *et al.*

*v.*

JOHN JACKSON *et al.*

*Filed at Ottawa, January 19, 1893.*

1. CURTESY — *estate by the curtesy* — *at common law.* At common law where a man marries a woman seized, at any time during coverture, of an estate of inheritance, and has issue by her born alive, which might by possibility inherit the same estate as heir to the wife, and she dies in the lifetime of the husband, he will hold the land during his life by the curtesy.

2. HUSBAND AND WIFE — *interest of husband in the lands of his wife* — *at common law.* Under the common law there were two interests which, under the marriage relation, a husband might acquire in the lands of the wife: *first*, by virtue of the marriage alone the husband had the right to occupy the lands of which the wife was seized and to receive the rents and profits during coverture; *second*, upon the birth of a child capable of inheriting, the husband became invested with an estate in the lands, which, during the life of the wife, was denominated initiate, and upon her death became consummate.

3. A woman married in 1858 acquired title to eighty acres of land and had issue born capable of inheriting in 1859, and also in 1860. *Held*, that her husband took a vested estate in the land as a tenant by the curtesy initiate, which he might have conveyed, and one which might have been sold on execution against him, and that it was not within the power of the legislature to deprive him of such vested estate by any subsequent act.

4. SAME — *Married Woman's act of 1861 and 1874* — *abolishing estate by curtesy.* Where a married woman in 1873 acquired title to a forty-acre tract, it was held that her husband was, by the Married Woman's act of 1861, precluded from acquiring any estate in such land during the coverture, and the wife not dying until after the act of 1874

took effect, he took only dower in such land. During his wife's life the husband had no vested estate in his wife's land, acquired since the act of 1861, and the legislature had the right to abolish the estate by curtesy.

5. BILL OF REVIEW — *when it lies.* If there has been an erroneous application of the facts found by a decree, a court of equity may revise or reverse the decree by bill of review.

6. SAME — *must be brought within five years.* A decree in a suit for partition which finds the several interests of the parties, and appoints commissioners to make partition, is a final decree, though no partition is ever made, which may be reviewed by writ of error or bill of review in five years after the rendition of the same. The fact that the case remains on the docket several years after the entry of the decree, can not affect the rule requiring a bill of review to be filed within that time.

7. SAME — *minority of party excluded from the five years limitation.* A bill of review, for error apparent on a decree or the record, must be brought within the time allowed for suing out writs of error, which is five years. In such case the minority of the party filing the bill will be excluded from the five years the same as on a writ of error.

WRIT OF ERROR to the Circuit Court of Stark county; the Hon. N. E. WORTHINGTON, Judge, presiding.

Mr. MILES A. FULLER and Mr. V. G. FULLER, for the plaintiffs in error:

This is a bill of review brought by complainants to revise a decree of partition entered in the same court, for error in law, apparent upon the face of the decree, and may be brought as matter of right and leave of court not necessary. *Getzler* v. *Saroni,* 18 Ill. 511–517; Puterbaugh's Chancery Pleading (1st ed.), 256.

Bills of review may be brought for errors of law appearing on the face of the decree. Story's Eq. Pl., sec. 405.

The rule has now become well settled that the court will, upon such a bill, reverse or revise its own decree for an erroneous application of the law to the facts found, whenever a Court of Appeals would do so for the same cause. *Evans* v. *Clement,* 14 Ill. 209; *Moore* v. *Bracken,* 27 id. 23; *Griggs* v. *Gear,* 3 Gil. 2.

The statute has not prescribed the time within which a bill of review may be filed, but this court, in analogy to writs of error, has fixed the time at five years (*Lyons* v. *Robbins*, 46 Ill. 278), excluding from said five years the time of the disability of infancy, duress, etc. Rev. Stat., chap. 118, sec. 85.

Since the act of 1861 the husband had no present interest in his wife's lands and his right to curtesy was contingent, and did not vest until the death of the wife. *Beach* v. *Miller*, 51 Ill. 209 ; *Lucas* v. *Lucas*, 103 id. 125; *Bozarth* v. *Largent*, 128 id. 105.

At common law, and by the laws of this State, until the passage of the Married Woman's act of 1861, by marriage, the husband acquired an estate, during coverture, in the lands of the wife, held by her, in her right, but subject to his absolute control ; he was entitled to the rents and profits, and it could be sold for his debts. It was as absolutely his own while the marriage relation existed as if the title itself was vested in him. 2 Bacon's Abr., 15 ; 1 Washburn on Real Property, 276 ; *Bozarth* v. *Largent*, 128 Ill. 95.

It was liable to be seized and sold on execution for his debts, and the wife was powerless to prevent it. Freeman on Judgments, 186.

It was a freehold estate, vested in possession of the husband, continuing during the existence of the marriage relation, complete in itself, and to which nothing is wanting during the term, and he may sell it without her consent. 1 Washburn on Real Property, 276.

The estate was acquired by the marriage and had no connection with or relation to the estate of curtesy, and could not exist with it, because this estate continued during the marriage relation, and curtesy vested only on the death of the wife, when this estate by the coverture terminated.

That an estate by the curtesy initiate is a legal vested estate, liable to be conveyed or sold on execution : See *Bozarth* v. *Largent*, 128 Ill. 102; *Mettler* v. *Miller*, 129 id. 640; *Brud-*

*ing* v. *Davis,* 77 W. Va. 639 ; *Henderson* v. *Oldham,* 5 Dana, 254 ; Washburn's Real Estate, 140 ; *Wheeler* v. *Hotchkiss,* 10 Conn. 225 ; *Starr* v. *Pease.* 8 id. 541 ; *Townsend* v. *Griffin,* 4 Harr. 440.

Mr. M. SHALLENBERGER and Mr. ALLEN P. MILLER, for the defendants in error :

Complainants' solicitors assert that they can review the former proceedings in this case " for error in law, apparent on the face of the decree, and may be brought as matter of right, and leave of court not necessary." And as no other reason is, or can be given than " error of law apparent on the face of the decree," for the filing of said bill of review, it may be well to inquire whether there is such error, if any, in said decree, as to warrant this proceeding. " Errors of law, against which relief can be had by bill of review, must be such as arise rather from obvious mistake or inadvertence, appearing on the face of the decree, or at least of record, than from alleged error in the deliberate judgment of the chancellor, on a debatable question of law or equitable right." Puterbaugh's Chancery Pleading (1st ed.), 251 ; *Caller* v. *Shields,* 2 Stew. & Port. 417 ; *Young* v. *Forgey,* 4 Heyw. 189.

It is a general rule that a bill of review will not be entertained unless brought within the time allowed by statute for the suing out of a writ of error. *Sloan* v. *Sloan,* 102 Ill. 581 ; Story's Equity Pl. (7th ed.) sec. 410 ; *Lyon* v. *Robbins,* 46 Ill. 278.

"Adult defendant can not take advantage of non-age of co-defendant to bring writ of error, or join with minor in bringing it, after the lapse of five years." *Moore et al.* v. *Capps,* 4 Gil. 315.

There are four things necessary to constitute the tenancy by the curtesy : marriage, seizin of the wife, issue, and death of the wife. It was initiate on issue had, and consummate on the death of the wife. The initiate estate was a vested interest ;

could be sold on execution against the husband or conveyed by him. 4 Kent's Com. 27, 28; *Shortall* v. *Hinckley*, 31 Ill. 219; *Mettler* v. *Miller*, 129 id. 640.

The interest of the husband as a tenant by the curtesy initiate was a legal estate, and was both salable and assignable. 4 Am. & Eng. Enc. of Law, 962, and authorities cited in note 1; *Lang* v. *Hitchcock*, 99 Ill. 550, and cases there cited; *Gay* v. *Gay*, 123 id. 225.

In this case there can be no question but that all four requisites have occurred, and that John Jackson is tenant by the curtesy in these lands unless the subsequent legislation of 1861 and 1874 has so changed the law that the estate by the curtesy has been swept away from him. The law of 1861 did not abolish the tenancy by the curtesy, but did modify it. The Supreme Court, in the case of *Armstrong* v. *Wilson*, 60 Ill. 227, expressly decided that the law of 1861 did not abolish the tenancy by the curtesy, and referred to a number of former decisions of the court affirming and recognizing that estate after the passage of the law of 1861.

The law of 1861 did modify the tenancy by the curtesy so far as any lands were concerned which the wife acquired after the passage of that act. As the object of that law was to give the wife the control of her separate real estate independent of her husband, it necessarily operated to suspend or hold in abeyance the husband's rights to the rents and profits during the lifetime of the wife. This doctrine is clearly laid down by this court in *Cole* v. *Van Riper*, 44 Ill. 58.

Mr. Justice Craig delivered the opinion of the Court:

This was a bill of review brought by Wm. A. and John M. Jackson against John Jackson and others on the 20th day of August, 1890, in which the complainants sought to review and vacate a decree in a partition proceeding rendered on the 6th day of April, 1883, in the Circuit Court of Stark county.

The facts out of which the litigation arose may be briefly stated.

John Jackson and Paulina A. Jackson were married on the 14th day of October, 1858, and the following named children were born to them:

Lydia E. Jackson, born June 15, 1859.

Laura B. Jackson, born October 24, 1860.

William A. Jackson, born October 23, 1862.

Ursula A. Jackson, born October 7, 1864.

John M. Jackson, born August 25, 1866.

On the 13th day of March, 1860, Paulina A. Jackson became seized in fee of the west half of the N. E. ¼ of Sec. 2, 12 N., 5 E., in Stark county, and on the 4th day of January, 1873, she became seized of forty acres, part of the N. W. ¼ of Sec. 2, in the same township, more particularly described in the petition for partition.

On the 29th day of November, 1875, Mrs. Jackson died, leaving her husband, John Jackson, and her four children surviving her. On the 31st of August, 1882, the two daughters, Laura B. and Lydia, together with their husbands and William A. Jackson, who was then a minor, filed a petition for partition of the premises involved against John Jackson and the other two heirs. John Jackson answered the bill claiming an estate of tenancy by the curtesy in the premises.

On the hearing at the March term, 1883, of the court, the court found:

That John Jackson had an estate in curtesy in all of said premises, and was in possession thereof. That the foregoing named children of Paulina A. Jackson are "the owners in common of said premises, subject to life estate by the curtesy of John Jackson."

A decree was rendered, ordering partition of the premises subject to the life estate, and Samuel M. Adams, Benjamin R. Brown and Charles Potter were appointed to make such parti-

tion, and if not subject to division, to appraise and report the same.

The case was continued from term to term without further action until the March term, 1888, when said commissioners reported:

That they had examined the premises and find that they are not susceptible of division without prejudice to parties, and appraise the W. ½ N. E. 2, at $60 per acre, and the forty-acre tract at $55, both, however, subject to the life estate of John Jackson.

At the March term, 1889, the cause was dismissed.

It is first contended by appellee that there is no such error appearing on the face of the decree as will authorize a court of equity to interfere by bill of review. If there has been an erroneous application of the facts found by the decree a court of equity may revise or reverse the decree by bill of review. *Evans* v. *Clement*, 14 Ill. 208. The facts upon which the court found that John Jackson was entitled to hold the premises as tenant by curtesy, all appear on the face of the decree.

The date of the purchase of the lands by Paulina A. Jackson, with their description, date of her marriage, date of the birth of her children, and date of her death, all appear on the face of the decree. If, therefore, the decree under the facts as found, was erroneous, it could be corrected. The next question presented is, whether the complainants or either of them have lost their right to bring this bill, by lapse of time. As has been seen, the decree was rendered on the 6th day of April, 1883, and this bill was brought on the 20th day of August, 1890. No time has been prescribed by statute within which a bill of review must be brought, but writs of error are required to be sued out within five years from the time a judgment or decree has been rendered; and in analogy to the time prescribed for prosecuting writs of error, it has been held that a bill of this character should be brought within the time allowed for suing out a writ of error. *Lyon* v. *Robbins*, 46 Ill. 278. In

case of writ of error, sec. 86, chap. 110, of our Practice act, prescribes, that a writ of error shall not be brought after the expiration of five years from the rendition of the decree or judgment, but if the party entitled to the writ was an infant when the judgment was entered, the time of minority shall be excluded from the five years. Applying this rule to the present case, which we think should be done, John M. Jackson, one of the compainants, as found by the court in its decree, was born August 25, 1866, he would not, therefore, be of age until August 25, 1887, and, excluding his minority, he would have until August 25, 1892, to bring his bill, and the bill was filed two years before the time expired. So far, therefore, as John M. Jackson is concerned, his bill was brought in apt time. As respects the other complainant, he occupies a different position; he, as appears, became of age in October, 1883, and hence would be barred in October, 1888. It is, however, said that the time did not begin to run until the suit was finally disposed of in March, 1889. We do not concur in that view. The rights of all the parties as to their title and interest in the premises were fully and definitely determined and settled by the decree of April 6, 1883. That was a final decree and as to all persons who were parties to the proceeding, and under no disability, the decree could not be reviewed by writ of error or bill of review after five years, and the fact that the cause remained on the docket until 1889, and was then stricken from the docket, does not materially affect the question. The decree of April 6, 1883, was the only one ever entered in the case and there was nothing to prevent a writ of error from being prosecuted to review the decree at any time after it was rendered, for the period of five years.

We now come to a consideration of what may be regarded the merits of the case. That is, whether John Jackson was entitled to an estate of tenant by the curtesy in the premises. At common law, " When a man marries a woman seized at any

time during coverture of an estate of inheritance, &ast; &ast; &ast; and hath issue by her, born alive, and which might by possibility inherit the same estate as heir to the wife, and the wife dies in the lifetime of the husband, he holds the land during his life by the curtesy of England." 4 Kent, page 27; *Shortall* v. *Hinckley*, 31 Ill. 219. There are four things necessary to constitute the tenancy by the curtesy : marriage, seizin of the wife, issue, and death of the wife. Here all of these facts existed, and it is plain at common law John Jackson would have an estate by the curtesy in the lands. It may also be remarked in this connection that, under the common law, there were two interests which, under the marriage relation, a husband might acquire in the lands of the wife. First, by virtue of the marriage alone the husband possessed the right to occupy the lands of which the wife was seized and receive the rents and profits during coverture. Second, upon the birth of a child capable of inheriting, the husband became invested with an estate in the lands which, during the life of the wife, was denominated initiate and upon her death it became consummate. There is, however, but little or no dispute between counsel in regard to the rules of the common law on the subject, but the question in dispute is how far and to what extent the common law has been changed and modified by our statute. In 1861 the legislature passed an act known as the Married Woman's act, which provides, " That all the property, both real and personal, belonging to any married woman as her sole and separate property, or which any woman hereafter married owns at the time of her marriage, or which any married woman during coverture acquires in good faith from any person, other than her husband, by descent, devise, or otherwise, together with all the rents, issues, increase and profits thereof, shall, notwithstanding her marriage, be and remain during coverture her sole and separate property, under her sole control, and be held, owned, possessed and enjoyed by her the same as though she was sole and unmarried."

In 1874 the legislature passed an act to revise the law in relation to dower, the first section of which provides as follows : " That the estate of curtesy is hereby abolished, and the surviving husband or wife shall be endowed of the third part of all the lands whereof the deceased husband, or wife, was seized," etc. Under the act of 1861, and the Dower act of 1874, it is claimed that Jackson was only entitled to dower in the lands. It will be observed that Paulina A. Jackson acquired the eighty-acre tract of land in 1860, before the act of 1861 was passed ; that she was married in 1858, issue born capable of inheriting in 1859, and also in 1860. As to this tract of land Jackson had an estate as tenant by the curtesy initiate before the act of 1861 was passed. This was . a vested estate, one which Jackson, had he desired, might have conveyed, and one, too, which might have been sold on execution against him. *Shortall* v. *Hinckley, supra; Mettler* v. *Miller,* 129 Ill. 640. As the estate of Jackson was a vested estate before the act of 1861 was passed, it was not within the power of the legislature to destroy it or deprive him of it by any act that might be passed for that purpose. *Rose* v. *Sanderson,* 38 Ill. 247. As to the eighty-acre tract of land, we think the decision of the court was correct.

The forty-acre tract stands upon a different footing. That tract was acquired by Mrs. Jackson in 1873, when the act of 1861 was in full force. Under that act Jackson was precluded from acquiring any estate whatever in the land during coverture. It was, during coverture, the sole and separate property of the wife, and she alone was entitled to the rents, issues and profits thereof. *Cole* v. *Van Riper,* 44 Ill. 64. As Jackson, therefore, in 1874, his wife being still alive had no vested estate in the land, the legislature had the undoubted right to abolish the estate of curtesy, as to him and all others who were alike situated, and provide, as it did, that a surviving husband or wife shall only be entitled to dower. This view is fully sustained by the late case of *McNeer* v. *McNeer et al.,* 142 Ill.

388.    There is nothing in *Cole* v. *Van Riper*, *supra*, holding that the husband has any vested estate in the lands of the wife acquired after the passagè of the act of 1861, before the death of the wife.   Before the death of the wife he has no estate by curtesy, either initiate or consummate.   The fact that the husband might, after the death of the wife, become vested with an estate as tenant by the curtesy, did not stand in the way of the legislature abolishing that estate at any time before the  estate became vested.   As to the eighty-acre tract the  decree  of the Circuit Court will be affirmed, but as to the forty-acre tract the decree will be reversed and the cause remanded.

Appellants will recover costs.

*Reversed and remanded.*