# CHARLESTON

ALDERSON'S ADM'R *v.* ALDERSON *et al.*

Submitted January 25, 1899—Decided April 8, 1899.

1.  CURTESY—*Coal Lease—Royalties.*

    Where a wife is seised of a separate estate of inheritance in lands in this State, a portion of which consists in coal lands, and executes a lease to a party, authorizing him to open and operate coal mines in consideration of a royalty to be paid by such lessee, although no coal mine is opened on said land at the time of her death, in August, 1895, the husband will be entitled to an estate by the curtesy in the royalties arisiag from said lease, although no issue was born of the marriage. (p. 245).

2.  CURTESY—*Married Woman—Separate Estate.*

    An estate by the curtesy in the separate estate of the wife remains in the husband, unimpaired by statutes for the better securing of the property of married women, which declare that she shall hold the property to her sole and separate use, and that it shall not be subject to the disposal of her husband, or be liable for his debts. (p. 246).

3.  COAL LEASE—*Curtesy—Royalty.*

    Where coal land is leased by a wife in 1895 for the purpose of mining and removing coal, and no mine is actually opened on said land until after her death, as to the right of her husband to curtesy in the royalty such mine will be considered as open at the time of the wife's death. (p. 247).

Appeal from Circuit Court, Greenbrier County.

Suit by S. L. Price, administrator of Mary P. Alderson, against J. C Alderson and others. Decree for plaintiff, and Margaret L. Price appeals,

*Affirmed.*

JOHN W. HARRIS, for appellant.

MILLER & READ and SIMMS, ENSLOW & ALDERSON, for appellees.

English, Judge:

This was a suit in equity instituted in the circuit court of Greenbrier County by S. L. Price, administrator with the will annexed of Mary P. Alderson, against J. C. Alderson and others. The object of the bill seems to be to obtain a proper administration and distribution of the estate of said Mary Alderson. One of the principal questions presented by the pleadings is whether J. C. Alderson, as the husband of said Mary P. Alderson, is entitled to curtesy in the estate left by his wife. It appears that said J. C. Alderson and Mary P. Alderson were married in 1874, and that she departed this life on the 15th of August, 1895, having disposed of her property, consisting principally of real estate, to various relatives, to the exclusion of her husband. A portion of said real estate consists of an interest in certain farms in Greenbrier County, and certain coal and timber lands in Fayette, Raleigh, Braxton, and Clay Counties. It is alleged that no mines had been opened at the time of Mrs. Alderson's death, but it appears that during her lifetime a lease was executed by herself and husband, together with other parties interested therein, to one James Laing, of Raleigh County, W. Va., of a tract of coal land, containing five hundred and twenty-five acres, situated in Fayette County, for the term of twenty-one years. The circuit court held that said J. C. Alderson was entitled to curtesy in said coal mine and farming lands, and said administrator obtained this appeal.

The lease above mentioned was executed July 22, 1895, and said Mary Alderson, as stated above, died August 15, 1895. It is contended by counsel for appellant that J. C. Alderson is not entitled to curtesy in any of the lands of which his wife died seised, for the reason that at the time of the marriage, in 1874, the law required, as a condition precedent to entitle the husband to curtesy in his wife's estate, the birth of issue and the death of the wife, and that, although the statute was so changed by the acts of 1882 as to dispense with the birth of issue as a condition precedent, and to read thus (Code, c. 65, s. 15): "If a married woman die seized of an estate of inheritance in lands, her husband shall be tenant by the curtesy in the

same.  An estate by the curtesy in the lands of which a
married woman may hereafter die seized shall exist and
be held by her husband therein, whether they had issue
born alive during the coverture or not,"—yet the law as
it existed at the time of the marriage would control.  It was
contended that the effect of the marriage, at the time it
was consummated, was to declare that by that marriage
he should never have curtesy, unless such issue was born
of the marriage, and it was therefore not within the power
of the Legislature to alter its terms, and abrogate the con-
ditions upon which it was made.  The case of *Jackson* v.
*Jackson*, 144 Ill. 274, (33 N. E. 51), is cited in support of
this proposition, but reference to that case shows that
the marriage took place in 1858, that issue of the marriage
was born in 1859, and that the husband took a vested es-
tate in the land as a tenant by the curtesy initiate.  In
1861 and 1874 an act was passed abolishing estates by
curtesy; and, as to a tract of land acquired in 1873 by the
wife, the husband was not entitled to curtesy.  It is per-
ceived at once that this case is materially different from
the one at bar.  If the law had continued as it was at the
time of Alderson's marriage, he certainly, in the circum-
stances, would not have been entitled to curtesy; but the
statute passed in 1882, during the lifetime of his wife,
changed the law, and conferred upon him the right to
curtesy.

It is further contended by counsel for appellant that J.
C. Alderson was not entitled to curtesy in his wife's es-
tate because the married woman's act of 1893, chapter 3,
as amended in its first section by chapter 43 of the same
acts, places the married woman, in reference to her estate
of inheritance, in the same position she occupied at com-
mon law when an estate was settled on her with power of
disposition by will, or in the exercise of a power of ap-
pointment, and that, Mrs. Alderson having by will dis-
posed of her whole estate, her husband is barred of his
curtesy.  The case of *Kiracofe* v. *Kiracofe*, 93 Va. 591,
(25 S. E. 601), is relied upon to support this contention.
The syllabus in that case reads thus: "A married woman
owning an equitable separate estate in fee may, unless
prohibited by the instrument creating it, devise the same,

and thereby deprive her husband of curtesy therein. The power to make such devise is given by statute, and has the same effect as if incorporated into the instrument creating the estate, unless such instrument restrains the power." The statute of Virginia (Code, s. 2513) provides that a married woman is capable of making a will for the disposition of her separate estate, or in the exercise of a power of appointment; and said case only holds that she may dispose of her equitable estate if not restrained by the instrument creating it. The case of *Chapman* v. *Price*, 83 Va. 392, (11 S. E. 879), is cited and relied on in that case, which holds that, "as to a married woman's separate estate, the same may be so limited as to give her the inheritance, and to exclude the husband from curtesy." In that case the grant by parents of an estate of inheritance in lands to a married daughter contains the following habendum: "To have and to hold in her own right, free from the claims or demands from her husband, or any person claiming under, through, or against him, in any way, now or at any time hereafter,"—a very different case from the one we are considering. Under the Acts of 1893, p. 6, s. 3, it is provided that no married woman, unless she is living separate and apart from her husband, shall sell and convey real estate, unless her husband joins in the deeds or other writings by which the same is sold and conveyed. This provision applies as well to her separate estate as any other, and distinctly recognizes the right of the husband therein, and is found in the same chapter which provides that property conveyed to her shall be and remain her separate property, as if she were a single woman, and that same shall in no wise subject to the control of her husband, or liable for his debts. In the case of *Winkler* v. *Winkler's Ex'rs*, 18 W. Va. 455, this Court held that "at common law the husband was entitled to curtesy in all the real estate of which the wife died seised, whether such estate was separate or not." Kerr, in his valuable work on Real Estate (volume 1, § 842), says: "At common law the husband's curtesy is one of the legal incidents of the wife's estate of inheritance, and he will not be excluded from rights in property springing from the marital relation, except by words that leave no doubt of the intention

of the parties to deprive him of such rights; and therefore the husband will be tenant by the curtesy in his wife's separate estate, nowithstanding the fact that he is cut off from any participation in the rents and profits during coverture." In the next section the author says: "Estate by curtesy in the separate estate of the wife remains in the husband, unimpaired by statutes for the better securing of property of married women, which declare that she shall hold the property to her sole and separate use, and that it shall not be subject to the disposal of her husband, or be liable for his debts." This is almost in the exact language of our statute, and, we think, states the law correctly.

This Court held in *Austin* v. *Brown*, 37 W. Va. 634, (17 S. E. 207), that: "Where a married woman, not living separate and apart, but with her husband, undertook, by deed dated April 20, 1878, to sell and convey a certain tract of land, part of her real estate, to two of her sons, without her husband joining in such deed, said pretended deed was wholly ineffectual to devest the grantor of her ownership of such land, and did not pass any interest therein, legal or equitable, to the said grantees.  *  *  * The said grantor having died intestate, her other heirs at law, and the surviving husband, as tenant by the curtesy, have a right to such deed set aside and removed as a cloud upon her title,—the former, as remainder-men fee, according to their interests, subject to the life estate of the surviving husband." See, also, *Cunningham* v. *Cunningham*, 30 W. Va. 599, (5 S. E. 139), where it is held that, under the statute in force in 1887, curtesy cannot be barred by a provision of the will of a wife, even when it is expressed to be for that purpose, but such bar can be made effectual only by agreement between husband and wife *inter vivos*. See, also, *Bierne's Ex'rs* v. *Bierne*, 33 W. Va. 663, (11 S. E. 46). While it is true that the wife, in this case, devised her entire separate estate to relatives, to the exclusion of her husband, it is also true that at the time she did so the statute had removed the important condition precedent to the right of curtesy in the husband, to-wit, the birth of issue, and at the death of the wife said de-

visees, and the death of the wife said devisees took her estate subject to the life estate of her husband.

We come now to the consideration of the question as to the exent of the life estate of the husband, and as to Alderson's right to the rents or royalties of coal mines in Fayette County which were unopened at the time of the wife's death, in August, 1895. All the leading authorities concur in asserting the general principle that the life tenant may work mines that were opened by the former owner of the fee. See 1 Kerr, Real Prop. p. 494, § 583; *Crouch* v. *Puryear*, 1 Rand. (Va.) 258; Washb. Real Prop. 208. Can we say this coal mine was opened during the lifetime of Mrs. Alderson? On the 1st of August, 1895, she joined in a lease to one James Laing, conferring on him the exclusive privilege of mining coal on the land therein described. Was this an opening of the mine? This question was before this Court in *Koen* v. *Bartlett*, 41. W. Va. 560, (23 S. E. 666), in which case it was held that "the tenant of an estate for life, unless restrained by covenant or agreement, has the right to the full enjoyment and use of the land, and all its profits, during his estate therein, including mines of oil or gas open when his life estate begins, or lawfully opened or worked during the existence of such estate." HOLT, PRESIDENT, speaking for the Court in that case, said: "A mine lawfully leased to be opened is an open mine, within the reason of the rule as laid down in these cases; and when lawfully opened and worked, as in this case, during the time the freehold estate of the life tenant continues, the profits issuing therefrom, thus lawfully severed and produced, belong of right to him." So, in *Kier* v. *Peterson*, 41 Pa. St. 357, the court holds that: "If mines are already opened, or if the lease permits their being opened, it is not waste for the tenant to work them, even to exhaustion. Nor would it be waste to open new shafts or pits to follow the same vein." See, also, Eley's Appeal, 103 Pa. St. 300, in which the executors were authorized, with the consent of six-tenths of the owners, to lease the coal underlying a tract, which they did; and it was held that "the power given the executors to lease or sell the coal, with the consent of six-tenths of the owners, gave the life tenants the same rights over unopened mines that

they would have had if the mines had been opened and operated in testator's lifetime." To the same effect, see *Daly* v. *Beckett*, 24 Beav. 114; *Priddy* v. *Griffith*, 150 Ill. 560 (Syl., point 3, 37 N. E. 999). In the case at bar, Mrs. Alderson, by joining in the lease to Laing, and authorizing him to open and work the mines in Fayette County, did all she could towards opening the mines. By the agreement, Laing had the right to open and work the mines, and she to receive her portion of the royalty.

The cause was referred to a commissioner, who made his report, which was excepted to by J. C. Alderson upon several grounds,—among them, that he was not reported as a tenant by the curtesy of the lands of which Mrs. Alderson died seised. On November 23, 1897, the cause was heard, the exceptions to said commissioner's report were sustained, and it was held that J. C. Alderson was entitled to an estate by the curtesy in all the real estate of which his wife died seised of an estate of inheritance, except a tract situated in Greenbrier County, known as the "Andrew Stuart Farm," of about six hundred and ninety acres; that he was entitled to curtesy only to the extent of the interest of his wife therein after subjecting said interest to the payment of that portion of the purchase money for which it is first liable, which was paid by Margaret L. Price and James S. Price, joint owners with Mary P. Alderson of said farm, and also holding that J. C. Alderson was entitled to a life estate by the curtesy in said M. P. Alderson's interest in the mineral lands leased to James Laing by deed of lease dated August 1, 1895, and decreed accordingly. Having considered the points of error relied on, my conclusion is that the decree complained of must be affirmed, and the cause remanded for further proceedings to be had therein. This affirmance is without prejudice to any of the creditors hereafter introducing proper proof to sustain their debts included in the commissioner's report, to which the exceptions of J. C. Alderson were sustained for want of sufficient proof.

*Affirmed.*