# CHARLESTON.

## ALDERSON'S ADM'R. *v*. ALDERSON.

Submitted September 5, 1902.   Decided April 25, 1903.

1. SUIT—*Judgment Liens.*

   Where a suit is instituted by an executor to pay the debts of the estate out of the real estate of the testator, there being no personal assets; the estate being largely indebted, principally on account of endorsements and suretyship for which security debts there are judgment liens against the principal debtor and in the suit the lien creditors of the principal debtor have been convened; the principal debtor is not entitled to claim the benefit of sec. 7, ch. 139 Code, providing that no sale shall be made of his realty unless it appear to the court that the rents and profits of the real estate subject to the liens will not satisfy the same in five years. The principal debtor's land shou d first be subjected to the exoneration of the lands of the surety.   (p. 398).

2. JUDGMENT LIEN—*Deceased Wife.*

   Where the remainder in the estate of a deceased wife is subject to the payment of the debts of the surviving husband who has been duly adjudged a bankrupt under the U. S. Bankrupt Act of 1898, for which debts the estate of the wife was liable only as security or endorser, and the husband's estate by the curtesy has been subjected to sale and the rents and profits of such curtesy estate sequestered to pay the liens thereon, it is the duty of the circuit court to retain the residue of the life estate of said bankrupt or the proceeds thereof after satisfying the liens decreed against the same, and administer the same for the purpose of protecting and making whole the estate of the deceased wife and her devisees entitled to the remainder after such estate by the curtesy for the debts of said bankrupt for

which said remainders were decreed to be sold and for which they were only liable as security or endorser for the bankrupt instead of turning over such residue to the trustee in bankruptcy of said bankrupt.   (p. 399).

Appeal from Circuit Court, Greenbrier County.

Action by Mary P. Alderson's administrator against J. C. Alderson and others.   From the decree defendant J. C. Alderson appeals.

*Affirmed in part.*

John W. Harris and Mollohan, McClintic & Mathews, for appellant.

Miller & Read, Charles M. Alderson and John D. Alderson, for appellees.

McWhorter, President:

S. Lewis Price, administrator c. t. a. of Mary P. Alderson, instituted in the circuit court of Greenbrier County his bill against J. C. Alderson, the husband of his testratrix and others, alleging that the estate was considerably in debt and no personal property left to pay the debts; that before her death the testratrix had joined with her husband in a coal lease for certain of her lands in which the lessee had not developed nor opened the mines on said land; that Alderson had given notice to the lessee, James Lang, as well as to plaintiff that he claimed his wife's interest in said lease and curtesy in all real estate of which his wife died seized; alleging that Alderson was not entitled to curtesy in said lease nor in the proceeds derived therefrom, nor in any other land of the testratrix in their present condition, as said lands, except probably a tract of about one hundred and ninety acres in the Richlands, Greenbrier County, are undeveloped and timber lands upon which no mines had been opened and no operation commenced at the death of the testatrix, and as to that portion of the mineral land leased to Lang said J. C. Alderson united in said lease, parting with any and all interest he may have had therein.   Plaintiff asked the court to take charge of the administration of the estate of his testatrix under the will and give him full and explicit directions as to the payment of debts for which the estate might

be liable, and praying that said Alderson be required to discover any and all property he might own that was liable to the payment of the debts owing by him and for which the plaintiff testatrix was bound as his endorser, that the real estate of J. C. Alderson be first subjected to the payment of all debts due by him and on which his wife M. P. Alderson was endorser, that the will of his testatrix be construed and the rights of the devisees and legatees thereunder be determined and also the rights of J. C. Alderson, the husband, in her said estate.

The defendant J. C. Alderson filed his answer disclosing the land to which he was entitled and interest therein, showing that he had large interests and holdings in several counties in this State and in other states. The court decreed in that cause that J. C. Alderson was entitled to curtesy in the real estate of which his wife died seized of an estate of inheritance and including a life estate by the curtesy in the said interest of his wife in mineral lands described in the Lang lease which included the rents, issues, and profits arising from said interest by reason of said lease to land; from which decree the plaintiff appealed and the decree was affirmed by this Court, 46 W. Va. 242; (33 S. E. 228).

Plaintiff filed an amended bill at the March rules 1898, in said circuit court bringing in other parties, co-owners in certain lands with plaintiff's testatrix, praying that they be required to answer and disclose what their interests were and by whom the legal title thereto was held. At the June rules, 1899, plaintiff filed his second amended bill making the creditors of the estate of J. C. Alderson parties stating, that it was alleged in the original bill that said Mary P. Alderson was at the time of her death bound as security of or endorser for her said husband to a large amount, that some of said creditors had filed their claims in said suit which were allowed and reported to the court, that plaintiff was informed that there were others claiming to be creditors of said J. C. Alderson for whose debts his wife's estate was not bound who claimed the right to subject to the satisfaction of their claims the interest in her estate so adjudged in his favor and denying that such creditors had any such right, except subject to the prior rights of the remainderman and those who were creditors of both Alderson and his wife, and alleging that whatever interest said J. C. Alderson

might have in his wife's estate under the said decisions that interest must first be subjected to the payment of the debts of Alderson for which his wife's estate was bound and further alleging that the defendant Thomas Tabb as the owner of the legal title to the Raleigh County land under the deed of trust from Alderson and wife of date December 28th, 1893, must be brought before the court that other creditors named who claimed to have sued out and levied attachments since the institution of this suit upon said interest of Alderson for the debts asserted by them in this suit; that the defendant Tabb and Smith not parties to the original bill and individual creditors of said J. C. Alderson also claimed, as plaintiff was informed, to have sued out and levied attachments on the said interest; that the defendant's Bank of Alderson, Feamster, Peabody Insurance Co., and J. N. Alderson claimed to be judgment-lien creditors of said J. C. Alderson and that the defendants Miller and Read claimed to be assignees of a certain portion of said interest and prayed that the several attaching creditors, and the said judgment-lien creditors, assignees, and all others claiming to have liens upon the said interest or estate of said Alderson might be required to present their claims in this suit; that the said several parties might be enjoined from the further prosecution of any suits brought by them to subject said interest or estate to the payment of their debts; that the court might ascertain and determine for what debts of the said J. C. Alderson the estate of said M. P. Alderson was bound, the extent to which it was entitled to be relieved therefrom by the application thereto of the interest of said J. C. Alderson and that such application might be made according to the respective rights of the parties to this suit.

In April, 1899, Thomas Tabb, for Annie J. Phoebus, filed his affidavit in the circuit court of Greenbrier County and sued out attachments in several counties against said J. C. Alderson, and C. L. Smith and the Kanawha Valley Bank, respectively, also sued out attachments in actions of debt against said Alderson, all of whom designating the lessee Lang and the Sun Coal & Coke Co. as garnishees, and the said Phoebus filed her bill against said J. C. Alderson in said circuit court of Greenbrier County to enforce her claim against said Alderson and praying that defendants James Lang and S. Lewis Price

might be required to discover and disclose by answer, or as the court might otherwise direct, the moneys owing by them and the property in his possession or under their control belonging to the defendant J. C. Alderson and the enforcement of the attachment and for general relief.

The defendant J. C. Alderson filed his demurrer and answer to the second amended bill of said S. Lewis Price, administrator, &c., denying the rights of those creditors of his late wife, Mary P. Alderson and himself jointly, or those creditors of Mary P. Alderson on debts or obligations for which she was security for him to any priority of the other creditors, also himself in regard to respondents estate by the curtesy in the estate of his late wife, except such as said creditors might acquire by some mode and manner prescribed by law, and denying that his said interests must be first subjected to the payment of his debts for which his said wife's estate was bound to the exclusion of others of his creditors who might acquire proper liens on said estate.

The defendant S. W. N. Feamster also filed his separate demurrer and answer to the second amended bill setting up his judgment as a valid and binding lien on the estate by the curtesy of J. C. Alderson in the land of his wife and denying that the estate of his wife, by reason of her endorsement for J. C. Alderson, was entitled to any rights of substitution against the estate or interest of said Alderson except in so far as she had paid such debts, and then only to any lien obtained by said creditors of J. C. Alderson and averring that M. P. Alderson had paid no part of any debts for which she was the endorser or surety for said Alderson.

The defendant, the Kanawha Valley Bank, filed its answer setting up its claim against J. C. Alderson and the estate of Mary P. Alderson his endorser. The defendant, Annie J. Phoebus, also filed her answer.

On the 17th day of July, 1899, the causes came on to be heard together, when the defendant J. C. Alderson appeared specially and prayed oyer of the subpœnas in each of the said causes and moved to quash the said writs directed to the sheriff of Fayette County in each case, and also in each of said cases moved to quash the attachments therein issued; the court overruled the motions to quash the said writs in each of said

cases and overruled the motion to quash the attachments in the case of Annie J. Phoebus against said Alderson and sustained the motion to quash the attachment in the case of Tabb against Alderson and dismissed the bill of said Tabb. And Miller and Read, and J. N. Alderson, and S. W. N. Feamster tendered their separate petitions in the cause of Phœbus against Alderson and others which were filed by leave of the court and the cause was referred to Henry Gilmer, special commissioner, with instructions to state and report, first: a settlement of the administration account of Mary P. Alderson, deceased, showing what had come or should have come into the hands of said administrator belonging to the estate; second, the real estate owned by the testatrix at the time of her death whether held in severalty or in connection with others, her interest, the location, &c., whether wild or improved land; third, the debts of the testatrix owing by her at the time of her death and whether owing in the relation of principal or endorser, to whom owing, with the amount, dignities, and priorities; fourth, the debts of J. C. Alderson for which his wife was bound and the order of priority in which said debts should be paid out of the estate by the curtesy in the land of his deceased wife in the event it should be held that the said estate by curtesy is bound in the first instance for the payment of such of said debts as his wife was bound for as his surety or endorser; fifth, the liens by attachment, judgment, or otherwise against the estate by the curtesy of J. C. Alderson in the estate of his wife and dignities and priorities in the event it should be held that said estate is not bound in the first instance for the debts of said Alderson for which his wife was surety or endorser; sixth, what royalties, if any, have been collected or should have been collected from the lessee Lang and others under the lease on the interst of Mary P. Alderson's lands in Fayette County, by whom collected, when, and what disposition had been made of it; seventh, what rents have been collected since the death of Mary P. Alderson from the land of which she died seized, by whom and what disposition has been made thereof, and any other pertinent matter that commissioner might deem proper or be required to report by any party in interest.

On the 23rd day of October, 1899, the special commissioner, Henry Gilmer, filed his report to which several exceptions

were filed. On the 13th day of November, 1899, John A. Preston, trustee in bankruptcy of J. C. Alderson bankrupt, tendered his petition in these causes which he asked to be filed as his answer to the bills, to which answer the plaintiff replied generally, by which petition it appears that on the 11th day of August, 1899, a petition in bankruptcy was filed against J. C. Alderson by his creditors in the District Court of the United States for the District of West Vriginia, and that on the 5th day of September following he was duly declared by said court a bankrupt, and praying that said trustee in bankruptcy be made a party to the original and amended bills filed by the administrator of Mary P. Alderson and that his right be ascertained and determined so far as they rightfully might be under the pleadings and proofs taken or to be taken in said cause; that the estate and assets of said bankrupt in the possession or under the control of the said court might be turned over to him to be administered under the orders of the bankruptcy court and for further and complete relief. The cause came on to be heard on the 24th day of November, 1899, upon all the papers formerly filed and read, the decrees and upon the report of commissioner Gilmer the exhibits and papers filed therewith, and the depositions taken before said commissioner and filed as a part of his report, the exceptions of the plaintiffs administrator of M. P. Alderson Margaret L. Price, Jennie S. Price, the Peabody Insurance Co., the Manufacturers Fire Insurance Co., and the defendant J. C. Alderson to said report and upon the petition of J. A. Preston, trustee in bankruptcy.

The court overruled the exceptions of all the parties to said report and recited "and it appearing to the court that the lien creditors of said J. C. Alderson and all the creditors of M. P. Alderson were convened according to law" and proceeded to decree as follows: "It is therefore adjudged, ordered and decreed that the said report as corrected herein be, and the same is hereby confirmed; and it appearing from said report and the proceedings in this suit that the attorneys for J. C. Alderson, Miller and Read, and Simms, Enslow, and Alderson, are by their assignments and the decrees of this court entitled to priority to the several amounts set up before the commissioner and reported by him against the funds now in the hands of J. A. Preston, receiver of this court, amounting to one thousand,

three hundred and seventy-six dollars and forty-five cents,"
and decreed to Miller and Read the sum of seven hundred and
fifty dollars with interest as the first lien on said fund, and to
Simms, Enslow and Alderson the sum of five hundred dollars
with interest as the second lien against said fund, and to the
Peabody Insurance Co. the sum of thirty-seven hundred and
ninety-eight dollars and seventy cents as the third lien against
the real estate including the royalties of the Lang lease which
might thereafter accrue, of said J. C. Alderson except that por-
tion conveyed by J. C. and M. P. Alderson to Thomas Tabb, trus-
tee, by deed of trust mentioned in commissioner's report, to secure
Annie J. Phoebus, and decreed to Manufacturers Fire Insur-
ance Co. against J. C. Alderson the sum of twenty-nine hun-
dred and sixty-five dollars and thirty-two cents as the fourth
lien against the real estate and royalties of J. C. Alderson with
said exception; and to the Bank of Alderson for the benefit of
S. W. N. Feamster against said Alderson the sum of nine hun-
dred and ninety-four dollars and eighty cents as the fifth lien
against said real estate and royalties; and to Joseph N. Alder-
son against J. C. Alderson the sum of one hundred and fifty
dollars as the sixth lien against the same; said decree further
recites the fact of the filing of the petition in involuntary
bankruptcy in the United States District Court by the credi-
tors of said J. C. Alderson and his being adjudged a bankrupt
and the appointment therein of John A. Preston as his trustee
in bankruptcy, and that the attachment lien of Annie J. Phoe-
bus, the Kanawha Valley Bank, and Clarence L. Smith, and the
Commercial Bank of Wheeling as well as the said judgment
lien of feamster and the judgment lien of J. C. Al-
derson were each and all of them acquired and took
effect within the four months next preceding the filing
of the said petition in bankruptcy and that the court had no
further jurisdiction for the enforcement of said attachments
and judgments; and the court did not pass on the merit of
said claims against said J. C. Alderson but left the parties to
assert such rights as they might have in the said bankruptcy
procedings or elsewhere.

It was further decreed that said Preston, receiver, pay over
to said Miller and Read, and Simms, Enslow and Alderson
the sums decreed to them out of the funds in his hands from

the estate of J. C. Alderson and that the chancery suit of the Commercial Bank of Wheling against said J. C. Alderson pending in said court be consolidated with, and thereafter be heard together with these suits; it was further decreed that Annie J. Phoebus recover of the estate of M. P. Alderson the sum of nine thousand, five hundred and eighty-three dollars and eighty-four cents for which debt she was bound as a surety of said J. C. Alderson, which was decreed to be the first lien on the interest of both M. P. and J. C. Alderson in what was known as the Raleigh land conveyed by M. P. and J. C. Alderson to Thomas Tabb, trustee, by deed dated the 28th day of December, 1893, and was also a general lien without priority against the other real estate of M. P. Alderson deceased, and decreed to other parties further sums against the estate of M. P. Alderson, deceased, and provided that unless the said M. P. Alderson's administrator or some one for the estate within ninety days from the date of the decree, and unless the defendant J. C. Alderson or some one for him within the said time should pay off the said recovery had against them respectively, then that the special commissioners named in said decree should proceed to sell said land and interests of the said M. P. Alderson's estate and of J. C. Alderson, from which decree the defendant J. C. Alderson appealed to this Court.

The first assignment of error is the overruling of the defendant's demurrer to second amended bill, claiming that the objects of the original bill were incompatible with the paper of the second amended bill, that the original bill was brought to settle the estate of plaintiff's testatrix and to exclude defendant J. C. Alderson from curtesy in said estate and could not be turned into a general creditors bill against said Alderson when his wife's estate was not a lien creditor of his and had not at that time been compelled to pay one cent for said Alderson as his surety or endorser; that no execution had been returned on any judgment *nulla bona* nor was there any allegation in any of the bills that the rents, issues, and profits of defendant Alderson's real estate would not in five years discharge all of the liens against the same; that the said amended bill on its face showed no equity as it did not allege that either M. P. Alderson in her life time, or her estate had, by paying any lien debt of said Alderson as surety for him, become entitled to be subrogated to any lien

against his estate. The original bill was filed by the personal representative of M. P. Alderson, deceased, under the statute to subject her real estate to the payment of her debts, she having left no personal estate, a large part of which debts she owed only as surety or endorser for her husband J. C. Alderson, and because of his interest in the real estate sought to be subjected to the payment of such debts, as well as his liability for a part of the debts as principal debtor he was a necessary party to the suit, and the plaintiff had a right to have the estate he represented to be protected, by having the interest of J. C. Alderson in the real estate of his testatrix first subjected to the payment of his debts for which the estate was bound as surety or endorser, and which the bill prayed might be done; it also prayed for a discovery from the said J. C. Alderson as to what property he owned which would be liable for his debts, and in response disclosed by answer his lands and interests in lands, whereby it appears that he has large holdings of real estate and interests in this State and elsewhere besides his curtesy estate. From the record it appears that the larger amount of the indebtedness reported against the estate of M. P. Alderson were debts for which said estate was bound only as surety or endorser of appellant. So the relations existing between Alderson and his wife's estate was that of principal and surety which is a subject of equitable jurisdiction, and the relation between Alderson, the life tenant by the curtesy and the remaindermen is also an equitable one, and a court of equity will protect as far as it may, the remainder against the acts, defaults or obligations of the life tenant. And the court having in addition to the other grounds of equitable jurisdiction these grounds and having the whole estate and all parties to be affected by its administration properly before it as parties defendant, it was proper that it should dispose of all questions and equities arising between the parties and as far as possible to reimburse the remaindermen out of the estate of J. C. Alderson to the extent that the remainder was taken to pay his debts. It would seem that the judgment liens against said Alderson could not be properly enforced against his real estate or interests therein, in the absence of an allegation that the rents and profits would not satisfy the judgments in five years, or unless it so appear to the satisfaction of the court in some way

in the cause as porvided in section 7, chapter 139, Code; *Dun-fee* v. *Childs,* 45 W. Va. 155, as the sale is being made for the purpose of paying off the judgment-liens; but the majority of the Court held that the theory of plaintiff's suit is that under the facts appearing in the cause equity has jurisdiction to administer the estate of Mrs. M. P. Alderson, and to protect the fee in the real estate thereof from all liabilities, not primarily resting upon it, to the extent that such liabilities may be satisfied out of an interest in the same real estate owned by J. C. Alderson who is a necessary party to this cause and who is primarily liable for such indebtedness and to adjust all equities between her estate and the estate of her said husband threin; that in such case the principal debtor is not entitled to have the benefit of the statute providing that his lands shall not be sold unless it appear that the rents and issues will not pay the debts against them in five years. The principal debtor's land should first be subjected to the exoneration of the lands of the surety; that it is not a suit for the enforcement of judgment leins against the debtor's real estate, neither is it necessary that it appear that executions of the judgments be returned *nulla bona* before proceeding against the lands of the principal debtor. Certainly if Mrs. Alderson had paid the judgments against her husband and this had been a suit to subrogate the estate of Mrs. Alderson to the rights of the judgment creditors whose debts she had paid, the principal judgment debtor would have been entitled to the benefit of the provisions of the statute referred to in rlation to the renting of his lands instead of sale thercof, in case the rentals would pay the debts in five years.

And it is assigned as error by the defendant that the court decreed a sale of the curtesy estate of said Alderson in the lands of which his wife died seized, alone, when the record of the suit formerly before the Court showed that he was the owner of other valuable lands and without ascertaining whether or not the rents and profits of said lands would pay the debts as the statute requires. This assignment is met by what has just been said.

It is contended by appellant also that the court erred in refusing to quash the attachments sued out against the estate of J. C. Alderson. This is wholly immaterial in this cause as the said attachments were rendered null and void by the

United States Bankrupt Act of 1898, Foster's Code of Bankruptcy, section 260; Bankrupt Act, section 67f. "All levies, judgments, atachments or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy against him shall be deemed null and void in case he is adjudged a bankrupt and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same and shall pass to the trustee as part of the estate of the bankrupt unless the court shall on due notice order that the right under such levy, judgment, attachment or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid." The court ascertained that said attachments were sued out and levied within the four months next preceding the filing of the petition in bankruptcy againsa the said J. C. Alderson and very properly held that it had no jurisdiction for the enforcement of said attachments and judgments recovered within said time and declined to pass upon the merits of said claims against said Alderson and left said claimants to assert such rights as they might have in the said bankruptcy proceedings or elsewhere.

A cross error is assigned that the court erred in directing the residue of the life estate of the said J. C. Alderson, or the proceeds thereof, after satisfying the judgment liens decreed against the same, to be turned over and paid to John A. Preston, trustee in bankruptcy of said Alderson to be distributed under the orders of the bankruptcy court instead of retaining and administering the same for the purpose of making whole the estate of Mrs. M. P. Alderson and her devisees entitled to the remainder after such life estate for the debts of J. C. Alderson for which said remainders were decreed to be sold and for which said remainders were only liable as security for J. C. Alderson.

It is well said by appellees counsel: "The effect of this ruling is to compel the remaindermen to permit their remainders to be sold to pay the debts of the life tenant, sacrificing their fee for the protection of said life estate, for debts primarily those of the life tenant. In other words the fee of the remain-

der is sold and lost forever, the debts of the life tenant are paid his life estate is cleared, freed of incumbrances and turned over to him or his creditors, who go their way rejoicing, leaving the remaindermen but the memory of an estate they should have enjoyed and the satisfaction of knowing they have paid the debts and saved the estate of J. C. Alderson.

Having jurisdiction to ascertain the debts of J. C. Alderson for which Mrs. Alderson's estate was liable, and having both estates, life and remainder, before the court, it should have granted full and complete relief, adjusted all equities between the estates, and made the estate of Mrs. Alderson whole, so far as possible, out of the life estate of J. C. Alderson."

The circuit court having taken jurisdiction of said parties, matters, and interests before the filing of the petition in bankruptcy, and the trustee in bankruptcy having filed his petition in the nature of an answer in the cause asking to be made a party to the suit and submitting himself to the jurisdiction of the court, the court had a right to proceed in the cause according to the principles of equity, so far as not to violate the terms of the Bankrupt Act, this it did observing the liens valid under the act and abating those invalid as procured by attachments and judgments within the period of four months prior to the filing of the petition in bankruptcy. This disposes, also, of the assignment that the court erred in entering any decree of sale in the said causes after the adjudication in bankruptcy of said Alderson. See *Mason and Hogue* v. *Warthens,* 7 W. Va. 532. As claimed in the cross assignment of error the court should have directed the residue of the life estate of said Alderson, after the satisfaction of the judgment liens decreed against the same, to be retained for the purpose of administering the same to protect the estate of Mrs. M. P. Alderson and those entitled to remainder after such life estate for the debts of said J. C. Alderson for which said remainders were decreed to be sold and for which they were only liable as security for J. C. Alderson. *In re Price,* 92 Federal Reporter 987, (989). But, after such disposition, if there should still remain a residue the same would properly be turned over to said trustee in bankruptcy.

Appellant assigns as error the overruling by the court of his exceptions to the report of commissioner Gilmer as to the equitable estate of Mrs. M. P. Alderson in lands sold by S.

L. Price to said M. P. Alderson in her life time. The exception mentioned is as follows: "J. C. Alderson further excepts to the within report because it fails to report the estate of M. P. Alderson as the equitable owner of the interest sold by S. L. Price to her, as detailed in the evidence of witnesses Price and Preston, in the Fayette County lands. Price having sold the same to Mrs. Alderson by a written agreement, the destruction of said agreement could not revest the equitable title in S. L. Price, which could not pass from Mrs. Alderson except by deed, J. C. Alderson joining therein, and because it fails to report the said sum of $1,500 due by Price to Mrs. Alderson as a debt in favor of the estate against said Price." It appears from the evidence of John A. Preston that about the year 1887-8, or 9, at the instance of Mrs. M. P. Alderson and S. L. Price he wrote a paper between them in the shape of a contract which was not a deed; that after he wrote it she told him to take the paper and hold it; that the agreement purported to be the purchase by Mrs. Alderson of fifteen hundred dollors' worth of land of S. Lewis Price at not quite nine dollars per acre, and by calculation made the purchase one hundred and seventy-one acres; that the contract was never acknowledged before an officer nor recorded but remained in his possession all the time until he surrendered it or turned it over to Miss M. L. Price at the request of Mrs. Alderson; that Mrs. Alderson told him she wanted him to destroy the paper; he told her he did not like to do that unless he did it in her presence; she then said "Well, you give it to Mag (Miss M. L. Price) and she will destroy it." Miss M. L. Price was present and Mrs. Alderson then said to her "Mag, when Johnnie brings you that paper you destroy it;" that in a short time he took the paper over and handed it to Miss Price, as Mrs. Alderson had directed him to do. S. L. Price testified that there was fifteen hundred dollars paid by Mrs. Alderson; that his impression was that he had borrowed some money from her before that time, he thinks one thousand dollars, and she afterwards paid him five hundred dollars. When asked what lands were mentioned in said agreement of sale he answered, "Fayette land; just so much of the Fayette land at between $8.00 and $9.00 per acre, for part of my interest in my mother's estate. The land in Fayette was undivided and were about 4700 acres tract and this was a por-

tion of my interest in the four thousand, seven hundred acres tract. The Lang lease is a part of this four thousand, seven hundred acres tract." He stated that the land was never conveyed, that there was no deed from him to her, nor from her to him, and does not recollect whether the instrument was under seal or not; that when she was leaving she remarked to him that if she never came back he could have that land; and that he never repaid the fifteen hundred dollars to her, the legal title to the interest never passed to M. P. Alderson nor to any one in trust for her but is still vested in S. L. Price. There are no pleadings or allegations bringing the matter in question in this suit and, it could only be litigated therein upon a cross bill with proper averments bringing the matter directly in issue, making the said S. L. Price the owner of the interest in fee a party defendant to said cross bill; the pleadings may be so amended as to raise the question of the rights of said J. C. Alderson to curtesy in said interest, if he be so advised. It is apparent from the testimony of Thomas Tabb taken in the cause on the 13th day of June, 1899, and called to the attention of this court, that there was a mistake in the calculaion of the amount that should be recovered by Annie J. Phoebus against J. C. Alderson, and for which a decree was entered for the sale of the Raleigh lands; the amount as ascertained by the decree being $9,583.84 as of November 24, 1899, the date of the decree. Witness Tabb in his testimony says "The balance due as of December 1st, 1898, was nine thousand five hundred and fifty-nine dollars and sixty-eight cents, of which sum four hundred and seventy-five dollars and forty-four cents was interest. So take the principal sum of nine thousand, eighty-four dollars and twenty-four cents, with interest from December 1st, 1898, and add to this four hundred and seventy-five dollars and forty-four cents, the interest which he owed on December 1, 1898, will make the exact sum he now owes." So that to add to the principal sum of $9,084.24 the interest thereon from December 1, 1898, to November 24, 1899, $534.45, to which add $475.44, the interest owing up to December 1, 1898, as stated by Tabb makes the sum of $10,094.13, on the 24th day of November, 1899, which is the amount that should have been decreed instead of the sum mentioned in the decree of $9,583.84, and said decree is hereby amended and modified accordingly,

and as so amended the decree is affirmed, except as to the disposition of the residue of the estate of J. C. Alderson, after paying all the recoveries against him, which shall be disposed of, as hereinbefore indicated and this cause is remanded to the circuit court of Greenbrier County for further proceedings to be had therein according to the principles governing courts of equity.

*Affirmed in part*

BRANNON, JUDGE, *(concurring)*:

The right of a creditor against his debtor is one thing, that of a surety against his principal another, for many purposes. If a surety, after payment of the debt, seeks subrogation to the lien, claiming just the creditor's right, it may be that he would have to rent his principal's land, if it would pay the debt in five years. As to that I do not say. This is not a case of subrogation. It involves another right of the surety as against the principal, the right to have the principal pay the debt, though the surety has not paid a cent. A surety after the debt is due may file a bill *quia timet* against the principal debtor to compel such payment to escape danger, and may enforce any lien of the creditor against the principal's land. *Neal* v. *Buffington,* 42 W. Va. 327; *Watson* v. *Wiggington,* 28 *Id.* p. 575. I do not think the surety can be compelled to wait five years before being exonerated.