# CHARLESTON.

HEADLEY *v.* COLONIAL OIL CO. *et als.*

Decided May 10, 1910.

1. DOWER—*Release by Wife.*
   Where a wife joins her husband in a deed conveying a one-half interest in undiscovered oil and gas in place, she thereby releases her claim to dower in such portion.

2. SAME—*Rights of Widow—Oil and Gas Leases.*
   If, after the execution of such deed and the death of the husband, the wife should then unite with the heir in the execution .of an oil and gas lease purporting to lease the whole of the oil and gas underlying the land, she will be estopped to claim dower against the lessee, or his assigns, in more than one-half of the royalty oil reserved in the lease.

3. SAME—*Release—Execution of Oil and Gas Lease.*
   Upon the husband's death the wife's right to dower becomes a vested interest, and by joining the heir in an oil and gas lease, before assignment of dower, reserving a portion of the oil to be thereafter discovered, as rent, or royalty, she does not thereby release her dower in the royalty oil. Her interest in the royalty is the same as it would be in the royalty derived from a like lease made by the husband in his life time.

Appeal from Circuit Court, Tyler County.

Bill by Mansfield Headley against the Colonial Oil Company and others. Decree for complainant, and the Colonial Oil Company and certain other defendants appeal.

> *Reversed and Remanded.*

*Van Winkle & Ambler,* for appellants.

*J. H. Strickling* and *K. C. Moore,* for appellee Mary Headley. *Charles A. Kreps,* for appellees Mellon and Snyder.

WILLIAMS, JUDGE:

. Appeal by Philip Kleeberg and Henry Goodkind and the Colonial Oil Company from a decree of the circuit court of Tyler county, pronounced on the 9th day of November, 1907. W. L. Mellon and N. S. Snyder also assigned cross-errors in brief of counsel. This cause was once before in this Court, and will be found reported under the style of *Headley* v. *Hoopen-*

*garner,* 60 W. Va. 626. It was then reversed and remanded for further proceeding, and when it went back to the circuit court it was referred to a commissioner to state an account showing the amounts to which the various parties interested were entitled, in certain proceeds derived from oil production on the lands of which Thomas J. Headley died seized. It is from the decree confirming the report of the commissioner, and overruling certain exceptions taken thereto by the parties here complaining, that the present appeal is taken. A brief statement of the facts is necessary to a correct understanding of the questions to be reviewed.

Thomas J. Headley was the owner of two contiguous tracts of land in Tyler county, one of 24 acres and the other of 46 acres. By deeds made in 1896 and 1897, in which his wife, Mary Headley, joined, he conveyed one-half of the oil in place on the 24 acres to the South Penn Oil Company and a one-half interest in the oil in place in the 46 acres to R. L. Loomis. After these conveyances Thomas J. Headley died, seized of the 70 acres of land and of the other one-half interest in the oil and gas therein, leaving a widow and five children, one of whom, Mansfield Headley, was an adult. Elisha Lemasters qualified as guardian for the infants. On the 17th of March, 1899, Mary Headley, the widow, the adult son and the guardian for the infants executed an oil and gas lease covering the whole 70 acres of land, providing for a one-eighth royalty to them of all the oil produced, and $200 for each gas well. Shortly after the date of this lease, to-wit, on the 8th of August, 1899, the guardian filed a petition in the circuit court against the infants praying for a sale of their interest in the oil and gas, on the ground that a sale would be beneficial to their interests. A sale of the four-fifths of the seven-eighths of the oil, and of the gas, to H. L. Hoopengarner was made and confirmed. The decree provided for the delivery to the guardian of two-thirds of the four-fifths of the one-eighth royalty oil, and for the payment of the other one-third of the four-fifths to said Lemasters, as special receiver, to be disposed of by him as the court might thereafter order, for the benefit of the widow during her life. This decree, while it confirms the sale of the working interest of the infants in the oil in place, is nevertheless, in effect, a confirmation of the lease which the guardian had previously made to said Hoopengarner,

and in which the widow and the adult heir had joined. This proceeding will be hereinafter spoken of as the court lease. The rights of Hoopengarner under this lease, by various *mesne* assignments, became vested in appellants. Oil was discovered under this lease, and the question arose as to how the royalty oil should be divided. Division orders to the Eureka Pipe Line Company were signed by some of the numerous persons interested, respectively in the royalty oil, and in the working interest. These orders show that Mansfield Headley, the adult heir, was to receive one-eightieth of the royalty, and that the guardian for the four infants had agreed to accept four-eightieths. These orders divided the royalty oil equally between the Headleys and the South Penn Oil Company as to the 24 acres, and equally between them, and Loomis and his assignees, as to the 46 acres. Deliveries of the oil were made in accordance with these division orders until the bringing of this suit.

In 1903 Mansfield Headley, conceiving the idea that he was entitled to one-fortieth of the royalty as his share, instead of the one-eightieth, brought this suit against the lessees, his co-tenants, the Eureka Pipe Line Company, and others, praying for a discovery of, and an accounting for the proceeds derived from all oil that had been produced from the lands, and for his alleged share of the royalty. An answer and statutory cross-bill was filed by appellants to this bill, in which they prayed that the interest of all the claimants to the oil might be ascertained and that respondents might be relased from the payment of more than the one-half of the proceeds from the royalty oil to the Headleys, and the Colonial Oil Company prayed that it should be adjudged to be the owner of the full seven-eighths of the working interest. The decree then entered, but which was reversed by this Court, decreed Mansfield Hadley the owner of the one-fifth of the one-eighth royalty of the oil which had been produced, or which might thereafter be produced from the 70 acres of land. The decree also held that the four infant Headley heirs were entitled to the four-fifths of the one-eighth royalty, and that said interests were subject to the dower of Mary Headley, the widow, which dower the court held to be the interest on the proceeds from one-third of the royalty during her natural life. During the time between the making of the lease and the bringing of the suit, it had been assigned a number of

times before it came to be the property of the Colonial Oil Company, the present owner. The decree in favor of the Headleys for the unpaid portion of the royalty was, therefore, against the several successive owners. They had severally accounted to the Headleys for the one-half of the royalty which they claimed by the suit. The decree was against them for the other one-half of the proceeds from royalty oil, which was one-sixteenth of the proceeds from all oil which had been produced, with interest thereon. The Colonial Oil Company who was then the owner and operator of the lease was directed to account to the Headleys for the royalty oil, one-eighth of the whole, thereafter produced as follows, viz: two-thirds of the one-fifth thereof to the five Headley heirs. The other one-third of the royalty was directed to be delivered to F. H. Hickman, special receiver, who was directed to sell the oil and invest the proceeds, and pay the interest thereon annually to the widow, during her life, and at her death to pay the principal of said fund to the aforesaid children of Thomas J. Headley. This decree was reversed by this Court which determined the following questions on appeal, viz: (1) that the South Penn Oil Company, the owner of the one-half interest in the oil in place in the 46 acres, was entitled to one-sixteenth of all the oil produced from said 46 acres, and that Loomis was entitled to one-sixteenth of all the oil produced from the 24 acres, he being the owner of one-half the oil in place in that land; (2) that the four children of Thomas Headley, deceased, who were infants when the lease was made, were entitled to four-fifths of one-sixteenth of the proceeds from royalty oil which had previously been produced from both tracts of land, in addition to the four-fifths of the one-sixteenth which had already been accounted for to them, that one-third of this amount should be paid to the special receiver to be lent by him and the interest to be applied in payment of dower during the widow's life. The interest of these four heirs in future royalty oil was fixed at four-fifths of one-eighth, two-thirds to be paid to them and the other third to be lent out during the life of the widow. These questions which were determined on the former appeal are now conclusive on the right of all parties to the cause. For the purposes of this case they are *res judicata*. It was also decided on that appeal that Mansfield Headley, the adult heir, was estopped, both by his father's deed and by his signing the

division orders agreeing that his interest in the royalty oil was the one-eightieth, to claim any more. This Court, however, held that the doctrine of *caveat emptor* applied to the purchaser of the four-fifths, the interest of the infants, because of the court proceeding to sell it, and that they were not estopped by their father's deed to claim the full four-fifths of the royalty oil which the decree made in the court lease provided that Hoopengarner should deliver to them. Nor were they estopped by the signing of the division orders by their guardian. This Court did not, however, determine what were the widow's rights in relation to the one-third of the four-fifths, which was set apart on account of dower. About the only question now involved in this appeal is, what portion of the income from this one-third is the widow entitled to receive? Why is she not dowable in all the lands inherited by the heirs? Usually the widow is dowable in all the lands whiich pass to the heir. But it would be palpably inequitable to permit Mrs. Headley in the present case to have dower in more than one-half the royalty. She had joined her husband in the execution of the two deeds, one to Loomis and the other to the South Penn Oil Company, by which the husband conveyed one-half the oil in place to them, and she thereby released her right to claim dower in the portion of the oil thus conveyed. Section 6 of chapter 73, Code 1906; *Corr* v. *Porter,* 33 Grat. 278; *Nichol* v. *Tomlinson,* 27 W. Va. 697. She is estopped by these deeds from claiming dower in the one-half of the oil. She is furthermore estopped by her implied covenant of warranty in the deed of lease made to Hoopengarner by the adult heir, the guardian and herself. *Knotts* v. *McGregor,* 47 W. Va. 566, and cases cited in the opinion in *Headley* v. *Hoopengarner,* 60 W. Va. on pages 632 and 633; *Kilcoyne* v. *South. Oil Co.,* 61 W. Va. 538. Her deed of lease purports to lease the whole, while she had dower in the half only. It is true the decree of the lower court pronounced on the 13th of August, 1904, determined that she was dowable in the full one-third of the royalty. But, upon appeal, that decree was reversed, and this Court did not pass upon her right. It is true the opinion states that the four-fifths of the one-eighth, decreed to the infants, was subject to the widow's dower. But whether or not the widow herself is entitled to receive it, was not decided. This is the question which was first

decided by the lower court by its decree now appealed from, and constitutes the error complained of.

Notwithstanding the decree made on the application to court to sell the share of the infants in the oil and gas recites that the widow is to receive dower in the four-fifths of the royalty oil, it can not be regarded as an adjudication in her favor against those persons now claiming an interest in her dower. She was not a party to that proceeding, nor were Loomis and the South Penn Oil Company, the joint owners in the oil. That was a friendly proceeding, under the statute, to sell infant's lands. The question which is now before us could not have been therein litigated. True the lease in which she had shortly before joined was exhibited with the guardian's petition, but this was only for the purpose of showing that she consented to the sale of the infants' interest. It did not make her a party. The widow's interest is not affected by the division orders signed by the adult heir and the guardian. She did not sign these, nor is her interest mentioned in them.

It follows from what we have said that the widow is entitled to only one-half of the interest on the one-third of the sum which was decreed to be lent out during her life. The lessees who were the several successive owners of the lease, or the working interest in the oil, are entitled, severally, to the other half. Consequently it was error to charge them with interest on the proceeds derived from the one-third of four-fifths of one-sixteenth, or the one-sixtieth of the oil, not yet accounted for. Because this one-sixtieth is the half of the third which should have been set apart for dower, and on which half the lessees themselves are entitled to receive interest during the widow's life. On the other two-thirds of past due royalty coming to the four Headley heirs, being the one-thirtieth of proceeds from all oil production, of course, the lessees should pay interest. In other words, one-third of proceeds from royalty oil which the commissioner found to be due on account of E. A. Headley, Alice Wright, Florence Wright and Susanna Headley's interest in Thomas J. Headley's estate, should be paid to the special receiver by the several successive owners of the oil lease, respectively, without interest, and the other two-thirds should be paid to the above named Headleys, or to the guardian of those of them who are yet infants, including interest on said several sums from the

time they became due. The four-fifths of the one-eighth, which is the one-tenth, of all the oil produced since the date to which the commissioner brought up the account, should be accounted for as follows, viz: two-thirds thereof to above named four Headleys, and the other one-third should be paid over to the special receiver to be invested by him during the life of the widow, and the annual income therefrom should be paid, one-half to Mary Headley, the widow, and the other half to the owner, or owners, of the lease. And, upon the death of the widow, the fund so lent, or invested, should be turned over to the said four Headley heirs, in equal proportion.

The court erred in not sustaining the exceptions taken to the commissioner's report by the Colonial Oil Company, and others, on account of improper charge of interest on one-third of the sums of money found to be due by them, severally, and the decree complained of, pronounced on the 9th of November, 1907, will be reversed, and the cause remanded for further proceeding to be had therein according to the principles herein stated, and further according to the rules and principles governing courts of equity.

### ON APPLICATION FOR REHEARING.

Counsel for Mary Headley, in a petition for rehearing, calls my attention to an error of fact which I wish to correct. It is recited in the opinion that Mary Headley, the widow, was not a party to the petition filed by the guardian for the sale of his ward's interest. I find, upon a more careful examination of the record in the former appeal, that she was made a party. The decree empowering the guardian to sell, recites that her consent to a sale was shown by her joining in the lease exhibited with the petition. The lease referred to is the one made by the guardian and by Mansfield Headley, the adult heir, a few months before. This court sale, or lease, was made to the same parties who had previously attempted to lease from the guardian, the adult heir and the widow, and on the same terms. Practically, it was an adoption, by the court, of the previous lease, so far as it concerned the interest of the infants. As to the adult heir, it was already binding. While it was necessary to determine the widow's dower in the royalty oil in that proceeding, as an incident to the ascertainment of what portion should be

set apart to the infants, it was not, and could not have been, a litigated question between the widow and those now claiming against her, that being merely a statutory proceeding to sell infants' land. The petition asked for the sale of nothing but the infants' portion, and none other was sold under the decrees in that suit. So far as the decree of confirmation undertakes to set apart one-third of the infants' share in the royalty oil, for the purpose of dower, it can only be regarded as an adjudication between the widow and the heirs. It can not possibly be regarded as a matter adjudicated between her and these appellants, because neither they, nor those under whom they claim, were before the court. True the fund so set apart by the court was on account of dower, but the widow is estopped, by the two deeds made by her and her husband in his lifetime conveying the one-half of the oil and gas in place, from claiming more than one-half of it against the persons now claiming under those conveyances. She is also estopped from claiming it against those who purchased under the court sale, because they did not in that proceeding purchase her dower; they simply purchased the infants' interest, subject to her dower; therefore, the doctrine of *caveat emptor* which this Court applied against them in favor of the infants, but whether properly or improperly applied I do not say, can not be invoked by her in the face of her husband's deeds in which she joined. Her dower in the other half, although it became vested in interest on the death of her husband, did not become a vested estate in the land, because dower had not been assigned. *Haskell* v. *Sutton,* 53 W. Va. 206 (44 S. E. 533). Yet, by joining in the lease with the adult heir, she signified her consent that the land might be prospected for oil and gas; her interest in any discovered thereafter was the same as it would have been if the lease had been made by her husband in his lifetime after he had conveyed half to Loomis in one tract, and half in the other tract to the South Penn Oil Company, no more and no less.

The widow's rights were not adjudicated on the former appeal; the court then decided that the share of the four infants was four-fifths of the one-eighth, which the opinion says is "subject to the widow's dower." It did not decide that she was entitled to receive it as against these appellants. True the decree of the lower court did determine that the widow was

entitled to the interest on the full one-third of the four-fifths belonging to the infants, but on appeal that decree was reversed. Consequently, when the case was remanded, the question of the widow's share was an open one. It would be manifestly unjust and inequitable to allow the widow dower in that portion of the realty which she and her husband had conveyed away in his lifetime. By joining her husband in the deeds she released any claim to dower in one-half the oil and gas.

The misrecital of fact has occasioned no prejudice, and a rehearing will be denied.

*Reversed and Remanded.*