# CHARLESTON.

## MONARCH GAS CO. v. ORLANDO ROY *et al.*

### Submitted February 13, 1918. Decided February 26, 1918.

1. HUSBAND AND WIFE—*Wife's Separate Real Estate—Estoppel.*

    Though ordinarily a married woman is not estopped by the mere disavowal of title to her separate real estate, yet now that she may deal with it and enjoy the issues and profits derived from it as if she were single, she may be bound by estoppel in pais regarding contracts relating thereto. (p. 727).

2. SAME—*Wife's Separate Realty—Lease—Estoppel.*

    And if she assure the owner, by assignment, of an oil and gas lease on land acquired by her after the date of the lease that rentals accruing and payable after title vested in her and before the lease was assigned had been paid so far as she knew, equity will not permit her to declare and enforce against the assignee a forfeiture due solely to the non-payment of such rentals. (p. 727).

3. MINES AND MINERALS—*Oil and Gas Lease—Forfeiture and Re-Lease—Equitable Relief.*

    Refusal to accept a check for an amount less than the lease required to excuse operation on the land for the quarter then about to begin, when a check for the same amount for the same purpose within the next preceding quarter, though each amount was less

81 W. Va.

than the lease required, was accepted, the reduction being due to an alleged defect of title to part of the premises leased, does not warrant an immediate declaration of forfeiture by the lessor and the grant of a lease on the same land to another; and equity will relieve against such forfeiture and cancel the lease so executed. (p. 730).

Appeal from Circuit Court, Lincoln County.

Suit for injunction by the Monarch Gas Company against Orlando Roy and others. Decree for defendants, dismissing the bill, and plaintiff appeals.

*Reversed, and decree for plaintiff.*

*Meek & Renshaw* and *Simms & Staker,* for appellant.

*Maynard F. Stiles,* for appellees.

LYNCH, JUDGE:

On September 3, 1913, T. M. Bowles leased to J. L. Flack 160 acres of land in Lincoln County on which to drill and operate for petroleum oil and natural gas for a term of five years and as much longer as either of these products is found in paying quantities by explorations on the tract or the rental paid thereon. Bowles died November 15, 1915 and by will devised the tract to his sister, Mrs. Harriet Bowles, who now owns it. All the rights conferred on him by the lease, Flack and his associates assigned to the Monarch Gas Company, a corporation, on March 28, 1916.

This is a controversy between the Monarch Gas Company, claiming under the assignment from Flack, and Orlando Roy, claiming under a lease made to him by Mrs. Bowles for the same purpose upon the same tract September 11, 1916, and involves a provision contained in the Flack lease which, when properly interpreted and as the parties themselves construed it, as evidenced by their acts and conduct hereafter noted, required a well to be drilled on the land within the three months after the date of the lease to prolong its existence beyond that period. In other words, the failure to drill before the expiration of the three months should terminate the rights granted and avoid and annul the lease-contract. This avoidance and annulment, however, the lessee could, according to the pro-

vision, prevent and prolong the life of the lease each succeeding quarter, or three months' period, by paying to Bowles or depositing to his credit in the Putnam County Bank forty dollars each quarter.

Neither Flack nor the Monarch Gas Company entered upon the tract at any time to exercise the authority conferred; but prior to the death of T. M. Bowles and for the quarter beginning December 3, 1915, Flack promptly paid or deposited the money specified, Mrs. Bowles, devisee, receiving the first deposit made after the death of her brother. For the next succeeding quarter nothing was so paid or deposited either by Flack who owned the lease until March 28, the date of the assignment, or by the Monarch Gas Company, the assignee. Nor thereafter was there tendered or paid or deposited the exact sum required by the lease to effect its extention for any subsequent quarter until November 29, 1916, when four items, two of $7.50 each and two of $40.00 each were deposited in the bank to her credit, none of which has she withdrawn, used or recognized as properly belonging to her or subject to her control. But on May 3, 1916, the Monarch Gas Company did tender to her and she accepted a check for $32.50 to cover the quarter from June 3, to September 3, 1916. The reduction of the cash payment resulted from the representation of the agent of the company that an examination of the public records of the county disclosed a deficiency in the acreage of the tract due to some defect of title. Her version of the transaction is: "I told him I would not take it, (the check), it was not for the full amount; the lease called for $40.00 every three months, and he said he had the land abstracted and that was all that was due me, that he would be there in a short time to drill a well for me, but he never come." This check, however, she did accept and collect, apparently without relying upon the alleged promise to drill promptly, and without further protesting the claim of the partial failure of title. There is no proof of such reliance and she seems then to have recognized the justness of the reduction, at least, did not otherwise further demur to the tender, and accepted and appropriated the amount as compensation for delayed operation during the quarter beginning June 3, 1916.

Before the expiration of that quarter the Monarch Gas Company again tendered Mrs. Bowles another check for the same amount in lieu of drilling during the next quarterly period beginning September 3, 1916. This check she refused to accept and did not accept. Nor did the Monarch Gas Company cause the amount called for therein to be deposited to her credit until the thirteenth day after that period had begun to run. Acting upon the presumption of an intention to abandon the lease, she entered into the contract with the defendant, Roy; and when he entered or was about to enter upon the land to drill as so authorized, the Monarch Gas Company instituted this suit to enjoin him, his agents and employees from exercising the rights conferred and obtained a temporary restraining order which on final hearing upon the merits the decree, reviewed, dissolved and dismissed the bill.

What has been said reveals these outstanding and important facts: Excepting the one due March 23, 1916, Flack paid promptly and T. M. Bowles while living and Mrs. Bowles after his death accepted the required quarterly payments of $40.00 each, whereby there was saved to Flack until March 3rd the right to exercise the license granted by the lease; that the March 1916 payment was not tendered to Mrs. Bowles for acceptance or accepted by her at any time and was not deposited to her credit until November 29, 1916; that it remains in the bank subject to her order; that the Monarch Gas Company acquired only such rights as Flack possessed on March 28, to defer the exercise of which the Monarch Gas Company tendered to her and she accepted $32.50 in lieu of $40.00 to extend the lease for the ensuing quarter, each of them apparently in good faith believing there was a proportional loss of acreage occasioned by some defect in title; that the Monarch Gas Company tendered to her first in August and again in September $32.50 to extend the lease for the quarter beginning September 3rd, which sum being twice refused by her was deposited to her credit on the 16th, as was also on November 29, the forty dollars due and unpaid for the quarter beginning March 3, 1916, and two sums each for $7.50 to compensate for the deductions made because of alleged defects in

title, and finally the lease to Roy after the beginning of the September-December quarter.

Wherefore, obviously the first inquiry is whether the acceptance of the first $32.50 payment under the circumstances surrounding the transaction concluded Mrs. Bowles and foreclosed the right to declare a forfeiture based on the failure to pay the full amount specified in the lease as compensation in lieu of drilling within the March-June quarter of that year. There is no refutation of the testimony that when asked in effect if any previous delay rental remained unpaid on the date of the tender, she replied in answer to one question propounded to her, "none that she knew of." and to another, "there had money been placed in the bank."

What the social status of Mrs. Bowles at that time was, namely, whether married or widowed, covert or discovert, the record does not show. Though nothing is said as regards him, whether living or dead, the legal presumption is that the marital relation has not been disturbed in the absence of evidence of its dissolution by death or divorce, whatever the actual fact may be. 26 Cyc. 879, and cases cited in note 29. Does the acceptance by Mrs. Bowles of the sum tendered and her declaration as to former payments estop or preclude her from declaring and enforcing a forfeiture of the right of exploration, the sole basis of the forfeiture being the failure to tender and pay the full amount prescribed by the lease?

A married woman is estopped to assert an interest in land inconsistent with a grant by deed in which she joined, as held in *Headley* v. *Colonial Oil Co.,* 67 W. Va. 628; and by her verbal assent to the construction of an easement to transport timber through her separate real estate where the licensee expends money in the construction of the road and operates it under her immediate observation, as held in *Tufts* v. *Copen,* 37 W. Va. 623. Though she may not be barred from asserting title to her separate estate in land, under the principle of estoppel in pais, she may be as to her personal estate. "Now that she is enabled to contract as if single, she will be bound by estoppel in pais touching her contracts as if single." *Williamson* v. *Jones,* 43 W. Va. 562, point 11 syl. The statement by Mrs. Bowles in answer to the inquiry respecting the pay-

ment of former rentals for delay in drilling was such as nat-
urally would tend to mislead the holder of the lease, show no
necessity for further investigation to ascertain the real want
of payment of such rental, and lead the company to believe
the fact to be as represented by her. She was the proper per-
son to whom to apply for information upon the subject of
inquiry. Presumably no one knew better than she whether
the contract had been complied with in that respect. There
was no other more reliable source from which to obtain an
answer with greater assurance or confidence in its correctness.
If she did not know, who would know? It was a matter pe-
culiarly within her knowledge, a matter which directly con-
cerned her. Estoppel may arise out of silence when duty re-
quires one to speak, out of acquiescence when interest de-
mands denial. But Mrs. Bowles was neither silent nor ac-
quiescent. Her reply was equivalent to an affirmation or
representation of payment, and she cannot now be permitted
to take advantage of her own dereliction but is concluded by
the information imparted, information which she does not
deny she gave. Wherefore, clearly she cannot now be heard
to assert a forfeiture which she failed to declare at the proper
time when by her representations she induced the Monarch
Gas Company to predicate its action upon the assumption of
a previous satisfactory compliance with the requirements of
the lease by the lessee, and therefore also of the non-existence
of the forfeiture now sought to be enforced.

Much argument is addressed directly to the second phase
of the case, namely, whether, when an oil and gas lease con-
tains a provision for its avoidance or nullification for failure
to drill within a specified period, three months in this in-
stance, a result which, according to another provision em-
bodied in the former, the lessee may prevent by paying a cer-
tain sum quarterly, payment thereof must, to prevent a for-
feiture, be made before the beginning of each successive quar-
ter as Roy, the second lessee insists, or does payment made
within such quarter avail to prevent a forfeiture as the Mon-
arch Gas Company insists? To sustain the second alter-
native, counsel for the Monarch Gas Company cite *Hukill* v.
*Myers*, 36 W. Va. 639, a case whose facts differ materially

from these found in the record before us, though there is some similarity in the leases. The Myers lease required Hukill to commence drilling operations on the land within the second year of the lease term or thereafter pay Myers twelve dollars monthly until the work of drilling was commenced, the failure to drill or pay to work a forfeiture of the lease. By agreement a change was made from monthly to quarterly payments. They were not paid monthly or quarterly as they became due, but were received by Myers or as directed by him from time to time without regard for the express stipulation of the lease. Points one and two of the syllabus mark the difference noted. Both speak of indulgence, acquiescence and waiver and correctly declare that in such circumstances equity will not recognize or enforce a forfeiture. No such circumstance was disclosed here. With the exception hereafter alluded to, each payment to prolong the life of the lease was tendered or deposited prior to the beginning of the quarter for which they were intended, thus by construction indicating the necessity for advance payments or deposits. There is no such acceptance of overdue payments proved in this case or in *Friend* v. *Mallory,* 52 W. Va. 53, relied on by counsel, as warrant application of the doctrine of waiver and deny to Mrs. Bowles the right to declare and enforce a forfeiture resulting from such arrearages as may have occurred. She refused but one tender, that one being the payment due September 3rd. Though not for the same amount, rentals other than the one due March 3rd were tendered to her before each successive quarter began, including the one due in September 1916, and these were accepted except the last, and this one she declined, as she says, because the amount was less than the lease required. Appellant's witnesses say she did not mention or insist upon more than the amount offered and relied solely upon the claimed lapse in August. Evidently she misapprehended the purpose for which the Monarch Gas Company tendered her the first payment due after it acquired possession of the lease. That payment, she thought, was to postpone development on the land during a quarter beginning in May instead of June, evidently an er-

roneous conclusion on her part. With reference to this lease no quarter began in May.

But admitting reliance upon the tender of an amount insufficient to comply with the lease requirements, can she under our decisions and in the light of the acceptance without complaint of a payment of a like amount for a former extension, arbitrarily and immediately refuse longer to be bound by an agreement against which she offers no other objection and proceed at once to lease to another upon terms not disclosed and thereby strike down a valuable right acquired through the expenditure of money aggregating in this instance $160.00 a year for three years, without granting any time whatever to supply the alleged shortage? Such departure from the positive requirements of the lease as may have occurred was due as much to the conduct of Mrs. Bowles as that of the Monarch Gas Company, neither of whom acted otherwise than in the light of the circumstances surrounding them at the time. There is not the semblance of anything approaching the dignity of proof tending to show or suggest fraud or deceit in their dealings or negligence on the part of one more than upon the part of the other. Whether the title to any part of the land was or was not defective no witness testifies and no abstract filed shows. Knowledge of the defect, if any, rested wholly upon the uncorroborated and uncontested declaration of Kirtley, who spoke of it to Mrs. Bowles and explained to her the cause of the reduction. To this explanation she offered no objection but accepted the check, collected the money and appropriated it to her own use and thereby expressed satisfaction with the result and acquiesced, temporarily at least, in the truthfulness of the representation; and not until late in August or early in September, but before the beginning of the next succeeding quarter, did she question the existence of the defect, if the mere statement that the amount tendered was less than that called for was a protest against an attempt to reduce the acreage.

If to the reason assigned as an excuse for refusing the tender, we accord the fullest import and interpret the language used to give notice of an intention not to receive less than forty dollars for each succeeding quarter, including

that then about to begin, can she abruptly and arbitrarily terminate the right to exercise the license granted? Our decisions and the decisions of other states uniformly reply, "No." *Wilson* v. *Carbon Co.,* 88 S. E. 1075; *Johnson* v. *Armstrong,* 94 S. E. 754, and cases therein cited. Any other answer would allow a lessor to accept willingly moneys expended in reliance upon a right purchased and paid for to defer explorations on lands for valuable mineral products, a delay in which the owner impliedly expresses concurrence and acquiescence by receiving the compensation agreed upon, and then upon the appearance of an opportunity to secure a more favorable contract without notice or warning decline to accept further payments, declare the right compensated for terminated, confer upon another the same right and so on from time to time as he may deem most condusive to his financial interests. Equity withholds assent from a proposition fraught with such danger.

Finally, jurisdiction to determine the equities between the parties litigant is questioned by the appellee. The right to entertain the suit and grant relief is settled in this jurisdiction by the decisions cited infra, reference to which suffices to show equity is the proper forum to adjudicate all issues arising between claimants under conflicting oil and gas leases executed by the same lessors or those holding under them on the same tract of land: *Pyle* v. *Henderson,* 55 W. Va. 122; *Peterson* v. *Hall,* 57 W. Va. 535; *Mustard* v. *Development Co.,* 69 W. Va. 713; *Carbon Black Co.* v. *Ferrell,* 76 W. Va. 300.

We are therefore of opinion to reverse the decree, reinstate the cause dismissed and cancel the lease executed by Harriet Bowles to Orlando L. Roy September 16, 1916, and award appellant its costs.

*Reversed, and decree for plaintiff.*