# CHARLESTON.

### ELLEN MINNER v. G. W. MINNER *et als.*

### Submitted September 23, 1919. Decided October 7, 1919.

1. DOWER—*Rights Before Assignment in Oil Royalties.*

    Where a husband and wife unite in a lease for oil and gas,
    though no production is had thereunder till after his death,
    the widow is entitled, until assignment of her dower, to one-
    third of the royalty oil and gas well rentals payable under the
    lease, and not to the interest only on such one-third. (p. 681).

2. SAME—*Royalties and Rentals of Open Oil Well Profits of Land
    and Not Corpus of Estate.*

    In such case the well is deemed an "open well" as of the
    date of the husband's death, and the royalty and rental there-
    from part of the issues and profits of the land, and not a por-
    tion of the corpus of the estate to be preserved intact for
    those entitled in remainder or reversion. (p. 682).

3. SAME—*What are Profits and Corpus of Estate Determined at
    Time of Death.*

    In a contest between the widow and heirs for the purpose of
    determining what portion of the yield from the real estate of

84 W. Va.

the deceased husband shall be termed issues and profits, in which she may share, and what shall be deemed part of the corpus of the estate, it is customary to employ as a basis for such determination the date of the death of the deceased. (p. 682).

4. SAME—*Production of Mines is "Issue and Profits" of Estate.*

The term "issues and profits," in law, as applied to real estate, comprehends every available return therefrom, whether it arise above or below the surface, and includes the produce of mines as well as the yield from the surface, provided the mines were opened or authorized to be opened by the owner of the preceding estate of inheritance. (p. 682).

Appeal from Circuit Court, Clay County.

Suit by Ellen Minner against G. W. Minner and others. Decree for plaintiff in part, and she appeals.

*Reversed in part. Affirmed in part. Remanded.*

*J. E. Springston,* for appellant.

*O. L. Hall* and *B. C. Eakle,* for appellees.

LYNCH, JUDGE:

The questions presented for decision upon this appeal arose in the prosecution of a suit instituted in the circuit court of Clay County by the widow of J. L. Minner against the administrator of his estate, his heirs at law and several other defendants, for the purpose of causing to be laid out and set apart as and for her dower interest a one-third part of a tract of land containing about 72 acres, of which her husband died seized, and for the further purpose of ascertaining the extent of her dower interest in the delay rentals, oil royalties, and gas well rentals which had theretofore been paid and are to be paid pursuant to the provisions of an oil and gas lease executed by her husband and herself during his lifetime. The lease, dated January 11, 1907, granted to J. M. Geary for a term of ten years, and as long thereafter as oil or gas is produced from the land leased and royalties and rentals paid therefor, the exclusive right to drill and operate for oil and gas upon said tract of 72 acres, upon the stipulated consideration of one-eighth oil royalties and an annual rental of $150.00 for each gas well, with the usual provision for delay

rentals. This lease Geary assigned to the United Fuel Gas Company, and the latter assigned the oil rights thereunder to the Ohio Fuel Oil Company. Neither Geary nor his assignees commenced operation under the lease within the lifetime of plaintiff's husband.

The only question presented involves the extent of the dower rights of the plaintiff in the delay rentals, oil royalties and gas well rentals paid and to be paid pursuant to the lease prior to the assignment of her dower in the land subject to the lease. We are not concerned at this time with any question respecting the assignment of dower in the land itself, or with the proper disposition of the royalties and rentals after such assignment. The court below in its decree found that plaintiff was entitled as dowress to "one-third part of all moneys paid as delay rentals under the oil and gas lease on said land up to the time of the completion of an oil or gas well on said land, and that thereafter she is entitled to the interest on the one-third of the one-eighth oil royalty reserved * * * in said lease, and that she is likewise entitled to the interest on the one-third of all moneys paid * * * as gas well rentals on producing gas wells drilled under said lease." As to the first proposition contained in the decree there is no cause of complaint, but plaintiff, however, insists that, because the lease was executed during the lifetime of her husband, she is entitled to the full one-third of the royalty oil and gas well rentals instead of the interest only on such third, though no production was had within the lifetime of her husband.

Until the death of her husband a widow's dower is inchoate, but immediately upon his death becomes consummate. That, however, does not signify that she is vested with an estate in his lands. Until assignment of her dower the widow has merely a vested right, not an estate, to sue for and compel the setting aside to her, as her dower interest, of one-third of the real estate of which her husband died seized, and it is only upon such assignment that she acquires a vested estate in the assigned portion of his lands for the remainder of her life. *Haskell* v. *Sutton*, 53 W. Va. 206; *Darnell* v. *Flynn*, 69 W. Va. 146, 150; *Huddleston* v. *Miller*, 81 W. Va. 357.

After assignment of her dower, the widow as life tenant enjoys the privileges and is subject to the duties incident to such estate. She may take and appropriate to her use the issues and profits of the real estate assigned to her, but must not destroy or remove the corpus thereof. That belongs, not to her but to the next vested estate in remainder or reversion. In order that she might not be left destitute or be inconvenienced pending the assignment of her dower, the Legislature in section 8, ch. 65, Code, provided that until such assignment is made, "the widow shall be entitled to demand of the heirs or devisees one-third part of the issues and profits of the other real estate which was devised or descended to them, of which she is dowable, and in the meantime may hold, occupy and enjoy the mansion house and curtilage without charge." Thus, until dower is assigned, the widow is entitled to demand one-third of the issues and profits of all the real estate subject to her dower, and may "hold, occupy and enjoy" the mansion house and surrounding inclosure. This right accorded by statute corresponds to and supplements her right as life tenant after assignment to all the issues and profits of the one-third of her husband's real estate set aside and allotted to her. Under that statute the question becomes one of defining what are the issues and profits which the widow may enjoy pending the assignment of her dower. When that question is determined, the statute is clear as to the proportion thereof to which she is entitled.

For the purpose of determining what portion of the yield from real estate of the deceased shall be termed issues and profits, and what shall be deemed part of the corpus of the estate, it is usually the custom to employ as a starting point the date of the death of deceased. Take, for example, a contest between a tenant for life and a reversioner or remainderman. The former is entitled to the issues and profits during his life, but must preserve intact the corpus of the estate. That is his only to enjoy, not to destroy. It is settled that gas and oil, like other minerals, until brought to the surface, constitute part of the real estate in which they are found. *Williamson* v. *Jones*, 43 W. Va. 562; *Wilson* v. *Youst*, 43 W. Va. 826; *Preston* v. *White*, 57 W. Va. 278. The life tenant,

therefore, must not open new mines or wells for the purpose of withdrawing the minerals beneath the surface, for to do so constitutes waste of the corpus of the estate, of which the reversioner or remainderman properly may complain. *Williamson* v. *Jones, supra.* But, though he is restricted as to new wells, he may work old wells or mines upon the tract to the complete exhaustion of the minerals therein found, if the wells were open at the date of the termination of the preceding estate of inheritance. The holder of the latter estate by opening them has authorized them to be worked, and has the wells were open at the date o fthe termination of the prefits of the land. Likewise, if the opening of a mine or well was authorized by the holder of the preceding estate of inheritance through a valid lease executed before his death, though the well was not in fact opened till after his death, nevertheless it will be deemed an "open well" as of the date of his death (*Koen* v. *Bartlett*, 41 W. Va. 559; *Williamson* v. *Jones, supra; Alderson's Adm'r* v. *Alderson*, 46 W. Va. 242; *Bramer* v. *Bramer*, 84 W. Va. 168, 99 S. E. 329), and the life tenant will be entitled to the yield therefrom as part of the issues and profits of the land. *Koen* v. *Bartlett, supra; Alderson's Adm'r* v. *Alderson, supra.* As said in *Koen* v. *Bartlett, supra*, at page 567: "The term 'profit' in law comprehends the produce of the soil, whether it arise above or below the surface, including the product of mines as well as the herbage growing on the surface." This is true, however, as we shall see later, only where, as in this case, the mine was opened, or the opening authorized by a valid lease, before the death of the holder of the preceding estate of inheritance.

Applying these wells settled rules to the facts involved in this appeal, we find that the opening of the well was authorized by a valid lease executed by plaintiff and her husband before his death. Though the well was not drilled till after his demise, the yield therefrom, according to the authorities just cited, is considered part of the issues and profits of the land, and not a portion of the corpus of the estate which must be preserved for the remainderman or reversioner. Hence there seems no room for doubt that plaintiff was entitled to one-

third of the royalty oil and gas rentals paid pursuant to the terms of the lease. *Engle* v. *Engle,* 3 W. Va. 246; *Koen* v. *Bartlett,* 41 W. Va. 559; *Alderson's Adm'r* v. *Alderson,* 46 W. Va. 242; Thornton, Law of Oil & Gas (3d Ed.), § 298.

Defendants, however, insist that plaintiff should receive only the interest on such one-third, and in support of their contention cite and rely on certain cases decided by this court which do restrict the widow or life tenant to interest on the one-third of the royalty oil and gas rentals. *Wilson* v. *Youst,* 43 W. Va. 826; *Ammons* v. *Ammons,* 50 W. Va. 390; *Eakin* v. *Hawkins,* 52 W. Va. 124; *Stewart* v. *Tennant,* 52 W. Va. 559; *Headley* v. *Colonial Oil Co.,* 67 W. Va. 628. Before proceeding to a discussion of these cases, and as preliminary thereto, certain further principles should be noted. As was above stated, the life tenant, while enjoying the privilege of working old wells on the land, has no right to drill or open new wells which were not authorized to be opened at the beginning of his estate. His authority to remove that which is considered part of the real estate is limited to those wells which were opened or authorized by the preceding owner of the fee, the yield from such wells being deemed part of the issues and profits of the land, because made so in effect by the action of the preceding owner. All else belongs to the corpus of the estate and must be preserved intact. Hence it is waste for such tenant to open or authorize the opening of new wells. *Williamson* v. *Jones,* 43 W. Va. 562. In case he does so, the yield therefrom is not part of the issues and profits, but a part of the corpus of the estate, and the proceeds or return derived from the sale of such product must be preserved and invested for delivery to the remainderman or reversioner upon the commencement of his estate. These proceeds now stand in the place of and represent that part of the corpus which has been removed.

This question is usually presented in the form of a joint lease by the life tenant and remainderman, reserving royalty or rent, and in such case the royalty or rental, being part of the corpus, is invested and preserved for the remainderman, but the interest thereon, being the yield therefrom, is paid to the life tenant, since the nature of his estate entitles him to

the yield from the corpus of the realty. *Wilson* v. *Youst, supra; Ammons* v. *Ammons, supra; Eakin* v. *Hawkins, supra;* Thornton, Law of Oil & Gas (3rd Ed.), §311. This explains why, in case of a mine or well opened or authorized to be opened at the commencement of the life estate, the royalty or yield from such well goes to the life tenant, and why in the cases last cited he receives only the interest thereon. Parenthetically it may be remarked that if the life tenant had acted alone in attempting to open a new mine not authorized to be opened, without joining with the remainderman, he would have been deprived even of interest on the royalty. *Williamson* v. *Jones*, 43 W. Va. 562, pt. 15, Syl.

The case of *Stewart* v. *Tennant*, 52 W. Va. 559, is quite analogous to *Wilson* v. *Youst, Ammons* v. *Ammons*, and *Eakin* v. *Hawkins, supra,* but with this distinction, that, whereas in the last three cases the lease was executed by the life tenant and remainderman, in the case first named the right to drill was conferred by the widow before assignment of her dower, and hence before she had received any definite or vested estate for life, and by ten of the twelve reversioners. There, as in the case at bar, the widow's dower was consummate but not assigned, and the court held that the vendee, as the owner of her dower, was entitled, under section 8, ch. 65. Code, and pursuant to the authority of the three cases last cited, to the interest on one-third of the royalty from the wells. An attempt was there made to differentiate between a situation where dower had not been assigned, as in that case, and where the life state was vested, but the court (p. 576) definitely declined to recognize any such distinction as valid. The only difference between that case and this is that the well there involved was not drilled or authorized to be drilled before the death of the husband, while here it was so authorized. For that reason, in the former the issues and profits to which the widow or those holding her dower right were entitled consisted of the interest on one-third of the royalty, while in this case they should include the one-third of the royalty itself, for here it is not part of the corpus, but authorized to be removed by the preceding owner of the fee and hence by him made an issue and profit of the land.

*Headley* v. *Colonial Oil Co.,* 67 W. Va. 628, also relied on by defendants, is quite similar to *Stewart* v. *Tennant, supra,* and again enunciates the principle that, where a widow and the heirs, after the death of her husband but before assignment of the widow's dower, join in a lease for oil and gas purposes, reserving a royalty, the widow will receive as dower the interest on one-third of the royalty share; but because she had joined with her husband during his lifetime in a sale of one-half of the oil and gas in place, therefore her dower in that one-half was lost, and she could claim only one-half the interest on one-third of the royalty share then before the court.

These cases relied on by defendant all deal with leases made after the death of the holder of the preceding estate of inheritance by a life tenant or by a widow before assignment of dower, who at the time had no authority or right to drill new wells, and could not by a lease convey a greater right than they had. Hence the royalty oil and gas rentals represented the corpus of the estate and belonged ultimately to the heirs, the life tenant or widow being entitled only to the interest therefrom. But in this case the well drilled after the husband's death pursuant to the terms of a lease made during his life is deemed an ''open well' as of the date of his death, the royalty from which is part of the issues and profits of the land. *Koen* v. *Bartlett,* 41 W. Va. 559; *Alderson's Adm'r* v. *Alderson,* 46 W. Va. 242; Section 8, ch. 65, Code. See also *Campbell* v. *Lynch,* 81 W. Va. 374, 384-386.

For these reasons our order will reverse the decree complained of in so far as it fails to award to plaintiff the full one-third of the oil royalties and gas rentals, and otherwise affirm it, and remand the cause for further proceedings consistent with this opinion.

*Reversed in part.     Affirmed in part.     Remanded.*