## In the Matter of the Estate of ARTHUR H. KELLY, Deceased.

Surrogate's Court, Kings County, June 11, 1940.

*Francis J. Sullivan,* for Elizabeth M. Kelly, petitioner.

*Mudge, Stern, Williams & Tucker,* for the administrators *c. t. a.,* respondents.

WINGATE, S. The mere fact that a legal contention is unprecedented is, of course, not conclusive as to its deficiency in merit. There is, on the other hand, however, no inference to be indulged that an individual attorney has discovered in the mountain of legal lore a vein of gold the existence of which was previously wholly unsuspected by the vast army of his contemporaries and predecessors.

The present petitioner is the widow of the testator who died in July of 1939 and whose will was admitted to probate in the latter part of the succeeding December. This will was executed in October, 1937, accords the widow the use of the family residence, free of expense, for a period of two years from the date of his death, gives her certain other benefits and makes disposition of the balance of his estate to others. The final item of the will reads: " The

provisions of this Will made for the benefit of my wife are intended by me to be and are in lieu of her dower and all right of dower in my estate."

The present petition, after reciting the death and probate of the will, asserts that since the date of death the widow has received no benefits from the estate except the occupancy of the family residence and the exemptions under section 200 of the Surrogate's Court Act. It then describes the family residence in some detail, sets forth certain figures respecting the income of the decedent during his life, and adds the statements: " Petitioner has not yet elected to take under or against decedent's will. No bar of quarantine benefits is set up in said will." She then asserts that a reasonable sum for her sustenance in the chief house of the decedent for forty days succeeding his death is the sum of $1,000 and concludes with a prayer that this sum be paid her " according to the provisions of section 204 of the Real Property Law." Her right in this regard is contested by the administrators c. t. a., who, alone, have been cited in the proceeding.

The section upon which this claim is predicated is a part of article 6 of the Real Property Law which, in its entirety, is devoted to " Dower and Curtesy." It reads:

" § 204. Widow's quarantine. A widow may remain in the chief house of her husband forty days after his death, whether her dower is sooner assigned to her or not, without being liable to any rent for the same; and in the meantime she may have her reasonable sustenance out of the estate of her husband."

In the argument advanced in support of her contention the position is adopted that this statute is in effect an amplification of the exemptions in favor of a widow contained in section 200 of the Surrogate's Court Act. None of the authorities cited to sustain this view lend it a scintilla of support and the history and background of the two enactments definitely refute it.

The germ of the exemption statute, now contained in section 200 of the Surrogate's Court Act, is found in sections 9 and 10 of title 3 of chapter 6 of part 2 of the Revised Statutes of 1828. The statute respecting quarantine dates back to Magna Carta (A. D. 1215) and its substance is referred to in the first English law book, written by the Chief Justiciar, GLANVILLE, about 1175 A. D. (Beames' Glanville, p. 131, note; Ancient Laws of England, p. 415), indicating that in this, as in many other respects, Magna Carta " was no new declaration " (Proeme, Coke's Second Institutes), but " was for the most part compiled from * * * the old common law " (2 Blackstone's Law Tracts, Introduction to the Charters, p. xiii).

Concerning this right Lord COKE writes: " But some have said that by the ancient law of England the woman should continue

a whole year in her husband's house, within which time if dower were not assigned, she might recover it; and this certainly was the law of England before the Conquest." (Coke's First Institutes, book 1, chap. 5, § 36.)

In several of the early American statutes, for example that passed by the Virginia General Assembly in 1705 (3 Henning's Virginia Statutes at Large, p. 374), the duration of the period of occupancy was extended until dower was assigned, the language in this regard being: " And till such dower shall be assigned, it shall be lawful for her to remain and continue in the Mansion house, and the messuage or plantation thereto belonging, without being chargeable to pay the heir any rent for the same." This and similar statutes were merely an " enlargement of her common law quarantine." (*Carnall* v. *Wilson*, 21 Ark. 62, 66.) They were in reality " a statutory substitute for dower " (*Shelton* v. *Carrol*, 16 Ala. 148, 153), designed to expedite or " coerce " (*Simmons* v. *Lyle*, 32 Gratt. 752, 758) the assignment of dower which was at that time the only statutory right in her deceased husband's estate which the widow possessed.

It follows that from its inception quarantine was merely a right which " supplements her right as life tenant " (*Minner* v. *Minner*, 84 W. Va. 679, 682; 100 S. E. 509) pursuant to the laws relating to dower. " The widow's possession or quarantine is an incident only to her dower, belonging to that right and inseparable from it." (*Bleecker* v. *Hennion*, 23 N. J. Eq. 123, 125.) (See, also, *Falvey* v. *Hicks*, 315 Mo. 442, 461; 286 S. W. 385.)

The few New York cases in which the question has been adjudicated demonstrate an identical conception of the right. " The house was a leasehold, Voelckner being a tenant for a year, and the statute giving to the widow what is called her quarantine, the right to remain for forty days after his death, in the chief house of her husband * * * has no application to such property. It relates only to lands in which the widow has a right or claim of dower. Here the executor had a right to take immediate possession of the house, on the death of his testator." (*Voelckner* v. *Hudson*, 3 N. Y. Super. Ct. 215, 218.)

" It is supposed that under our statute the widow has a right to her quarantine until her dower be assigned her. * * * The construction, therefore, of our statute and Magna Carta must be the same; and that of the latter appears to be well settled." (*Jackson ex dem. Clark* v. *O'Donaghy*, 7 Johns. 247, 248.) (See, also, *Matter of Meuschke*, 61 Misc. 9, 11; *Matter of Stiles*, 64 id. 658, 662.)

The essential difference between quarantine and the family exemptions is pointed out in *Matter of Mehn* (124 N. Y. Supp. 173, 175, not otherwise reported) in which it is observed: " Section

2713 of the Code [now Surr. Ct. Act, § 200] and this section 204 of the Real Property Law are two different and distinct rights. While every widow is entitled to have the exemptions as above construed set off to her under section 2713, it is only the widow of a deceased who left real estate in which the widow had a dower interest that is entitled to the provisions of section 204 of the Real Property Law."

It is obvious from this review that quarantine is, in reality, substantially a preface to dower and that only a widow who is entitled to the latter may be awarded the former. Does the present applicant come within this category? *Prima facie*, she does not. The decedent died in July, 1939. Effective September 1, 1930, section 190 of the Real Property Law was amended so as to abolish all rights of dower except in situations in which the parties intermarried prior to that date and in respect of real property owned by the decedent husband prior to that date. It is the obligation of a widow asserting her inclusion in the excepted class to allege, and, if necessary, prove, both of these necessary points. No such allegations are contained in the present petition, wherefore it must be deemed vulnerable to the motion for dismissal which is to be implied from the submission for decision on the pleadings. (*Matter of McGlone*, 166 Misc. 636, 637; affd., 256 App. Div. 1074; *Matter of Hazley*, 166 Misc. 745, 746; *Matter of Hearn*, 158 id. 370, 372.)

If an inference could be raised that a situation within the statutory exception was here present by reason of the statement in the will that the benefits accorded therein were given in lieu of dower, the widow would, at the moment, be in no better position. She has, as yet, given no intimation as to whether or not she will accept the proffered gift in satisfaction for her dower right (if in fact she possesses it). If she shall do so, her right of quarantine, being merely an adjunct of her right of dower, will disappear.

The suggestion which has been made that the court presently evaluate the right of quarantine on the supposition that the widow may, at some subsequent time, reject the testamentary gift and be found entitled to dower and quarantine, is unacceptable. It is ordinarily contrary to the policy of all courts to determine purely academic questions. (*Matter of Mount*, 185 N. Y. 162, 170; *City Bank Farmers Trust Co.* v. *Smith*, 263 id. 292, 295; *Lowe* v. *Lowe*, 265 id. 197, 202; *Matter of Franklin Trust Co.*, 190 App. Div. 575, 577.)

The present application will accordingly be dismissed without prejudice to a renewal at some future time upon a demonstration that a right of dower in fact exists if the widow shall have elected to reject the testamentary gifts tendered in lieu of dower.

Enter decree on notice in conformity herewith.